1832.

Garlick
v.
Strong.

GARLICK *vs.* STRONG & GARLICK.

Where the husband, who was about to sell his estate, agreed with his wife, and with the knowledge of the purchaser, that if she would join in a deed of the premises so as to release her dower, she should receive a certain portion of the purchase money as her separate property, free from the control of the husband; and the purchaser gave a note to the wife for her share of the purchase money, and the agent for the wife, in whose hands the note had been placed for her use, loaned a part of the money received on the note, and took a bond and mortgage directly to the wife; and the husband afterwards assigned the mortgage to the original purchaser of the estate, without the assent of the wife or her agent; *Held,* that in equity the bond and mortgage belonged to the wife, and that she was entitled to the money due thereon, for her separate use.

A post-nuptial contract between husband and wife, by which property is set apart for her separate use, although void at law, will be sustained in equity.

Where a general demurrer to the whole bill is overruled for want of equity, the defendant may demur *ore tenus* upon the ground that the suit is brought by a feme covert in her own name, when she should have prosecuted by her next friend.

Where a mere formal objection to the bill was made by demurrer *ore tenus,* the complainant was permitted to amend.

A party availing himself of the right to demur *ore tenus,* must pay the costs of the demurrer on the record.

Aug. 27.   THE bill in this case was filed by the wife against her husband, and C. Strong, to restrain the latter from collecting a bond and mortgage assigned to him by the husband, but alleged to be the separate property of the wife. The defendants demurred to the bill for want of equity. They also alleged, *ore tenus,* as a cause of demurrer, that the suit was brought by the wife in her own name, when she ought to have sued by her next friend. The facts are stated in the opinion of the chancellor.

*H. Van Derlyn,* for the complainant. The note of Strong for $1000, given to the complainant upon the consideration of her releasing her right of dower, was in equity her sole and separate property, free from the control of her husband; and it is not essential that a stranger should have been appointed her trustee, as her husband will be considered as her trustee,

in equity. It will at once be acknowledged, that if the note had been drawn payable to a stranger, in trust for the sole and separate use of Mrs. Garlick, her husband would, both at law and in equity, have been deprived of all power over the note. Mrs. Garlick paid a valuable consideration to Strong for the $1000. Her right of dower was her separate estate, over which her husband had no power. He could neither release nor encumber it by any act of his. It was the humane provision of the law for her widowhood. Upon being required to release it, by Strong and her husband, she had a right to put a value on her own separate property, and to require that the compensation to be paid for her right of dower should stand in lieu of it, as her separate property. To this both the defendants expressly agreed, and they obtained from Mrs. Garlick, upon the faith of their promise, the release of her right of dower.

It was not necessary in equity that the name of a stranger should have been inserted in the note as the trustee of Mrs. Garlick; for where a trustee is omitted to be appointed, the husband will be considered in such cases the trustee of his wife. (2 *Kent's Comm.* 136.) In the case of *Bennett* v. *Davis*, (2 *P. Wms.* 316,) I. Strong devised lands to his daughter, the wife of Bennett, to hold the same to her separate use, exclusive of her husband. Soon after the testator's death, Bennett being a bankrupt, the estate in question was assigned by the commissioners to the defendant Davis, in trust for the creditors; and upon Davis bringing his ejectment, the wife of Bennett filed her bill against Davis and her husband, to compel them to assign over the estate to her separate use. It was objected, on the part of Davis, that he being a creditor and having the law on his side, it would be hard to take the benefit of the law from him; and that though the testator might intend these lands for his daughter's separate use, yet that such intention was not executed according to law; that although he might have devised the lands to trustees for her separate use, yet the question was, not what he might have done, but what he had done. The master of the rolls took it to be a clear case that it was a trust in the

husband, and that there was no difference, where the trust was created by the act of the party, and where by the act of law. He said, "If I should devise that my lands should be charged with my debts, my heir would be but a trustee, and have no remedy for those debts but in equity. So in this case, there being an express declaration that the wife should enjoy those lands to her separate use, by that means her husband, who would otherwise be entitled to take the profits during the coverture, is now debarred and made a trustee for the wife. Also where the testator had the power to devise the lands to trustees for the separate use of the wife, this court, in compliance with his declared intention, will supply the want of them, and make the husband trustee; and the defendant, the assignee, can have no better right than the husband, and must join in a conveyance to a trustee, for the separate use of the wife." That decision was made, not upon the ground that the premises were given to Mrs. B. by devise, for there is nothing peculiar in a devise distinct from any other mode of conveying property to the separate use of a feme covert; but it was upon the ground of carrying into effect the intention of the devisor. To effect this, the husband was considered to be the trustee of his wife, and was thereby prevented from taking the property under his marital rights at law. And if the court would, in order to give effect to the intentions of the devisor, make the husband himself to be the trustee of his wife, with much stronger reason would they consider Garlick, in this case, to be the trustee of his wife. Mrs. Garlick is not like Mrs. Bennett—the mere passive object of another's bounty; but she has entitled herself to the property in question by paying therefor with her own property. No technical words are necessary to make it a separate trust; for where an estate was devised to the husband for the livelihood of the wife, it was held to make him a trustee. So in the bequest of a legacy to a feme covert, the words "her receipt to be a sufficient discharge to the executors," makes the husband a trustee for her. And a present to the wife by the husband's father, or even by a stranger, has been considered as a gift to her separate use. (1 Mad. 370.) In general, however, to prevent the operation of the marital right, a

clear intention that it shall be to her separate use must appear. In equity a wife may enter into a contract with her husband, for a valuable consideration, for the transfer of property from him to her. In the case of *Livingston* v. *Livingston*, (2 *John. Ch. R.* 537,) the wife was seised in fee of a house and lot, and she and her husband agreed by parol that the husband should buy another lot and build a house thereon in her name, and that her first mentioned lot and house should be sold, and out of the sale moneys the husband should be paid for the costs of erecting the new house, &c. ; the husband bought the lot in his wife's name, and built a house on it, and then the wife died ; this court, on a bill filed by the husband against the heirs of the wife, ordered the first lot and house to be sold to pay the husband for his expenses in erecting the house, &c. Though a deed from husband to wife is void in law, yet equity will enforce its provisions where it is for the purpose of making a provision for the wife during her widowhood, especially where the wife had, by an ante-nuptial contract, released all right of dower to arise under the marriage. (*Shepherd* v. *Shepherd*, 7 *John. Ch. R.* 57.)

The following authorities show that the release of the right of dower was a sufficient consideration to support the promise of the defendants to Mrs. Garlick : If a wife relinquish her right of dower in lands of her husband, in consideration of which, other property is settled to her use, the last conveyance will be supported even against the creditors of her husband. (4 *Munford*, 251. *Am. Ch. Dig.* 86.) Where a married woman relinquishes her right of dower, under an agreement that other property shall be settled on her in compensation, such agreement will be good, the relinquishment of the right of dower being a sufficient consideration. (*Taylor* v. *Moore*, 2 *Randolph*, 563. *Harvey* v. *Alexander*, 1 *Id.* 219. *Am. Ch. Digest*, 87.)

The Carr bond and mortgage was in equity the separate property of the complainant, being given to secure a loan of $600, made by her to Carr out of the $1000 paid by Strong on his note ; and her husband became her trustee in equity, and had no power to assign the same to the defendant Strong.

It follows that Garlick had no right to assign or discharge that bond and mortgage, and that the pretended assignment made thereof by Garlick to Strong was void in equity. Strong is not an innocent purchaser of the Carr bond and mortgage. He had full knowledge of the equitable interest of Mrs. Garlick.

The defendants object, 1st. that the complainant should have sued by her prochein ami ; 2d. that John Pellett ought to be a party; and 3d. that James M. D. Carr ought to be a party. These objections are to matters of form, and the defendants cannot avail themselves of them at the hearing. A demurrer must express the several causes of demurrer. (*Harrison's Ch. Pr.* 211. *Cooper's Eq. Pl.* 112. 2 *Maddock's Ch. Pr.* 225.) A demurrer, *ore tenus,* must be to that to which the defendant has demurred on the record. If the cause of the demurrer on record is not good, he may at the bar assign other causes, but he cannot demur, *ore tenus,* upon a ground which he has not made the subject of demurrer on record. (*Pitts* v. *Short,* 17 *Vesey,* 214. 2 *Mad. Ch.* 227.) The demurrer of the defendants assigns no cause but the want of equity in the complainant's bill. No want of parties nor of a prochien ami is assigned in the demurrer on record, and cannot now be assigned, *ore tenus.* According to the decision of Lord Eldon, in *Pitts* v. *Short,* it would be taking a new ground of demurrer, and relying on mere matters of form, when the demurrer on record is to the merits of the bill. The defendants have waived all objections of form, by not assigning them on record. The complainant has noticed for a hearing the demurrer on record, and ought not now to be delayed by questions of form, or any other objections than those assigned on the record.

The objection of not suing by a prochien ami, taken on the argument of the defendants, has nothing to do with the rights of the complainant. The whole and only object of a prochien ami is to secure the defendants costs in case they should prevail against the complainant. But that may be waived by them ; and if they had assigned that cause in the demurrer on the record, the complainant would immediately have applied to this court for leave to proceed by a prochien ami duly appointed, and

to have the bill amended accordingly, and this without costs ; for if a demurrer, *ore tenus*, is allowed, it is without costs. (2 *Mad.* 227.) The defendant has waived all objection for want of parties, by not assigning it as a ground of demurrer on the record, and naming on the record who the parties were, so as to enable the complainant to make them parties, if so advised. (*Idem.* 233.) If the chancellor should decide that the defendants have a right, *ore tenus*, to demur for matters of form, and that either of the objections urged by them are well taken, then the complainant asks leave to amend, and that without costs. In case a demurrer for want of parties is well taken, the plaintiff is entitled to leave to amend. (2 *Chan. Cas.* 197. *Mitf.* 174.) Formerly bills were dismissed when the proper parties were not brought in. The practice in England and this country now is, to order the cause to stand over, that the necessary parties may be added. (*Colt* v. *Lasnier*, 9 *Cowen*, 334.)

The complainant is entitled to the Carr bond and mortgage as a provision for her support, (she being deserted and abandoned by her husband) upon the principle of the wife's equity against the defendants in this suit. (*Haviland* v. *Myers*, 6 *John. Ch. R.* 180.) But if the complainant is not entitled, under either of the points, to the property in question as her separate property, nor to a provision out of it, the defendant ought to be decreed to re-convey to her her right of dower in the premises, upon the ground of a failure of the consideration, brought about by the fraud and injustice of the defendants.

*J. Clapp*, for the defendants. The bill is insufficient, and ought to be dismissed for want of proper parties. The complainant ought to have sued by prochien ami. At the filing of the bill she was a feme covert. A wife may institute a suit against her husband, but the bill must be exhibited in her name, by her next friend. (*Bingham*, 270. *Cooper's Eq. Pl.* 29. 2 *Kent's Comm.* 137. *Clancy's Rights of Women*, 358.) John Pellet ought to have been made a party. The complainant states that Pellet was her trustee. If the note and bond were the separate property of the complainant, the title is in

Pellet, her trustee, who must be a party. (*Bingham*, 199. 8 *T. R.* 546. *Marshall* v. *Ratton, Coop. Eq. Pl.* 34.) Carr gave the bond and mortgage in question. He is the debtor, where different parties claim to be the creditor. The decree will affect Carr; it will establish his creditor, and direct him when and to whom to pay the money due on the bond. He ought therefore to have been made a party. (*Cooper's Eq. Pl.* 33. *Id.* 37. 2 *Mad.* 180.) The want of proper parties, if apparent on the face of the bill, is ground of demurrer, or it may be objected at the hearing. (*Cooper's Eq. Pl.* 33. 2 *Mad.* 173, 293. 2 *John. Ch. Rep.* 238.) The complainant's remedy at law is complete, without recurrence to equity. The bill seeks to avoid the assignment of the bond and mortgage by Garlick to Strong. And the complainant asks for a decree declaring that she is entitled to the proceeds of the bond and mortgage, and to the four hundred dollars, part of the one thousand dollars, and for the appointment a trustee, &c.

This is not a bill of foreclosure. In fact the principal money will not be due until the first day of July, 1833. And there are but forty-two dollars interest due, the payment whereof Carr is ready and willing to make to the complainant. Where, then, is the equity? Upon what principle is the interference of chancery required? If the complainant is entitled to the money on the bond and mortgage of Carr, what prevents her from receiving it, when due? If she is entitled to the interest now due, why not receive it? Especially as Carr, the mortgagor, is ready to pay. If Pellet is the trustee of the complainant, which the bill charges, and the defendants by their demurrer seem to admit, why ask of chancery the appointment of a trustee? If Garlick had no interest in the bond and mortgage, how could his assignment to Strong affect the right of the complainant? Such assignment would be nugatory and void, without a decree from chancery. How can a void assignment affect the interest of the complainant? If the complainant holds this bond and mortgage for her separate use, she holds them as a feme sole, and her husband has no power over them. Carr, it seems, is ready and willing to pay, and would pay to the complainant, but for the apprehension

of Garlick's assignment. If this is a reasonable fear, why did he not file his bill of interpleader? (1 *Mad.* 173.) But the assignment is no obstacle to the complainant's enforcing payment of the bond. It would be no defence for Carr in a suit at law.

If the complainant holds the bond and mortgage as a feme sole, the assignment by Garlick must be viewed as the act of a stranger. The giving and receiving of an assignment by strangers cannot affect the rights of the creditor and debtor; and can be no impediment to the collection of the debt by the rightful creditor.

Strong is not in possession of the mortgaged premises, nor has he the bond and mortgage. The land is in the occupation of Carr, the mortgagor, and the complainant has now, and has always had the possession of the bond and mortgage. Strong has neither received the principal nor interest, and if the complainant's position be true, that this is the separate property of the complainant, he cannot enforce the payment against Carr. It was not even attempted to give Strong a greater interest than the husband had.

As to the payment of the $1000 by Strong, it was made to Pellet, the agent and trustee of the complainant; and with her approbation. What then, is there for a decree to operate on? Or what necessity for coming to chancery? A court of law is entirely adequate to afford redress. The arrangement between the parties, as to the $1000, was not a settlement on the wife. The note delivered to her belonged to her husband. The pretended agreement between Garlick and his wife was not in writing; it rested in parol. It was without consideration, or at least the pretended consideration; the release of the right of dower being very inadequate to the property claimed.

Garlick had taken the complainant to wife thirty-three years ago. He took her without any property. The bill does not pretend she brought her husband any thing in marriage. He had supported her upwards of thirty years, and had children dependent upon him. His property, in this state of things, was reduced to a remnant of $2000. The complainant demanded $1000, one half her husband's estate, as the condition of releasing her doubtful and inchoate right of dower; and

this without relieving her husband from any marital obliga-
tion, or from her subsequent claim of dower, or share of his per-
sonal effects, &c.    This $1000 is now claimed as a settlement
on the wife.   The requisition was unconscionable and unjust.

At common law a married woman was not allowed to pos-
sess property independent of her husband, but in equity she is
allowed, through the medium of a trustee, to enjoy property as
freely as a feme sole.    (2 *Kent's Comm.* 136.)   All personals,
as money, goods, cattle, &c. that are the property, and in
possession of the wife, at the time of the marriage, abso-
lutely vest in the husband.   (*Bingham,* 208.)   And what-
ever the wife, during coverture, earns by her labor, is solely
her husband's.   (*Bingham,* 218.   *Udall* v. *Kenney,* 3 *Cowen,*
599.)   The husband may release the wife's bond, legacy or
judgment.   (*Clancey,* 110.)   So a note given to a feme cov-
ert, though it be for a debt due to her while sole, is legally
payable to the husband; and the property vests absolutely in
him, and will not go to the wife on a dissolution of the
marriage.   (*Bingham,* 208.   8 *Mass. Rep.* 229.)   A husband
cannot make a deed to his wife, and a promise to her is void.
(7 *John. Ch. Rep.* 60.)   These are long established and fun-
damental rules of law regulating coverture.   It is not in the
power of the parties to do away the law of coverture.   Their
agreement to evade this law is unavailing and void.   The
law considers husband and wife as but one person; and they
cannot enter into a contract between themselves, changing
their relations as husband and wife.   Gifts to the wife enure
to the benefit of the husband, and his consent cannot vary his
right.   The law vests the property, and he may take it.   The
note in question then, though delivered to the complainant,
and in her name, became the property of her husband, and her
subsequent settlement with Strong was done by her as the
agent, and with the assent of her husband.

The complainant contends, that though this may be law, a
different rule prevails in equity.   That here, by the mere oral
consent of the husband, his marital rights over his wife's prop-
erty may be divested, and that even without the intervention of
a trustee, husband and wife may become sole persons, so far as
respects personal property, and may hold the same, independent

of each other.   The principle of the complainant goes the full extent of this proposition.   Nay, farther, that the husband may, by an oral declaration, put in his wife's hands his own property, to be held independent of him, and that the court of chancery will consummate the agreement by making the same a settlement, and providing the requisite trustee.   This is against law. (*Marshall* v. *Rutton*, 8 *Term Rep.* 545.) There is no principle of equity which goes this length.   It is true, that in the case of a devise of real or personal property to the wife of another for her separate use, the husband is considered the trustee of the wife, and the devise is allowed to take effect in that way, " in compliance with the intention of the donor." (*Clancy's Rights of Women*, 257.   1 *Peer Wms.* 125.  *Bing. Rep.* 187.   2 *Peer Wms.* 316.)   These are all cases of devises.

So too, in the English chancery, there are some cases, though *Clancy* says, " there is more doubt in such cases," where the gift proceeds from himself, as a gift of paraphernalia, or trinkets, or savings out of pin money, in which cases the husband has been considered the trustee of the wife. (1 *Atk.* 270.   3 *Id.* 393.   3 *Peer Wms.* 334.)   But in the case of trinkets, &c. given by the husband to his wife, he may alien them in his life time. (*Bingham*, 275.)   Indeed, the English chancery has once, under particular circumstances, allowed a husband to set over South Sea annuities in the name of, and to the separate use of his wife ; and considered the property hers. (5 *Vesey*, 71.)   But such claims are viewed with great jealousy. (*Clancy*, 260.)   Besides, the delivery to the complainant of a promissory note did not constitute a gift ; it was a promise to pay, to one who could only receive the promise for the benefit of her husband.   A gift of personal property can only be consummated by the actual delivery of the chattel or the money ; and until the actual delivery of the thing promised, the party may revoke his promise. (7 *John. Rep.* 26.   2 *Id.* 52.   18 *Id.* 145.)   The language of Jones, chancellor, in *McCartee* v. *The Orphan Asylum Society*, (9 *Cow.* 463,) is strong and explicit.   He says, " So the wife is incapable of acquiring personal property for her separate use

1832.

Garlick
v.
Strong.

by a direct transfer of it to herself, for *eo instanti*, that it is con-
veyed to her, the marital right vests it absolutely in him ; yet
a settlement upon her by vesting it in trustees for her separate
use, may effectually secure it for her benefit, and against his
dominion and control." The bond and mortgage given by Carr
to the complainant were the property of her husband. If they
were a chose in action of the wife, they became Garlick's,
as a marital right. It is not pretended by the complainant
there was any agreement between her and her husband, as to
the bond and mortgage. This, then, is the case of property
acquired by the wife during the coverture, and not by devise,
or gift for a settlement ; and therefore it belongs to the husband,
by virtue of his general rights as a husband. It is not a chose
in action of the wife, for it would not survive to her ; but if a
chose in action, still the money due on the mortgage is sub-
ject to the disposition of the husband only. (*Bingham*, 216.
2 *Atk.* 208.)

The wife cannot resort to equity for provision out of the
bond and mortgage. Equity never interferes with the legal
rights of the husband, unless its aid is required by the hus-
band or his assignee. If the bond and mortgage in question
be considered the wife's separate property, still Garlick, her
husband, while he maintains her is entitled to the interest.
(*Bingham*, 218. *Udall* v. *Kenney*, 3 *Cowen*, 591. 2 *Vesey*, 561.)
It is not stated in the bill that Garlick has ever refused to
support his wife. He must be presumed to perform his duty
in this respect. He did not turn her away. She left his
house voluntarily and went to her son-in-law Andrus'. If
she went away on the ground of ill usage, Garlick is lia-
ble for her support. He therefore is entitled to the inter-
est on the bond and mortgage. If Garlick had the right
to the interest, he could transfer that right to Strong. It
is expressly stipulated in the assignment that he transfers
only such power over the bond and mortgage as he might
exercise. The assignment was therefore valid, at least so
far as regards the interest. The complainant probably con-
siders the bond and mortgage as a chose in action assigned
to Strong, and seeks provision for herself and relief under the

decision in the case of *Udall* v. *Kenney*, (*3 Cowen's Rep.* 591.) The principle recognized in that case is, that where the husband or his assignee seeks the aid of chancery to reduce the wife's choses in action to possession, chancery will, on the application of the wife, see, before it grants the husband or his assignee relief, that he makes suitable provision for his wife. The rule is, "That the court of equity will not interrupt the legal title of the husband to the property of the wife, unless called upon by him to lend its assistance; but if he asks for equity, he must do equity for his wife." (*Bing.* 217. *3 Cowen*, 599, *per Savage, Ch. J. Howard* v. *Moffat*, 2 *John. Ch. R.* 208. 1 *Mad.* 484.) It will be found in the cases under this head, where chancery has interfered in behalf of the wife, that the husband or his assignee was disposing of, or attempting to reduce to possession the choses in action of the wife, or her fortune, which came to the husband with her on her marriage. The bill is premature; the defendants have not yet sought the aid of chancery. The Carr bond and mortgage did not come with the complainant in marriage and is no part of her fortune. It is a part of her husband's estate, which, in equity and conscience, belongs to him. The complainant's only claim is a pretended oral gift of the property in question. It furnishes no ground for the interference of equity. The husband has the right to it for the maintenance of himself and of his wife and children, for which he remains bound. A demurrer may express the causes, yet, says Kent, chancellor, (6 *John. Ch. Rep.* 149,) "when some causes are assigned, others may be added *ore tenus* at the hearing." (2 *Mad.* 287.)

THE CHANCELLOR. The facts stated in the complainant's bill are sufficient to entitle her to the relief asked for by that bill. She alleges that the husband was seised of a real estate worth five or six thousand dollars, parts of which were sold by him from time to time, and on which sales she relinquished her right of dower to the purchasers, at his request. That a part of the estate, worth about $2000, was afterwards sold to the defendant Strong; and the complainant refused to join in the conveyance and relinquish her right of dower in the prop-

erty, unless a part of the consideration money could be secur‑ ed for her separate use, the husband having wasted most of his property by intemperance. It was accordingly agreed be‑ tween the husband and wife, with the knowledge of Strong, that she should execute and acknowledge the conveyance, relinquishing her dower, and should receive out of the price of the property to be paid by Strong, $1000 as her separate property, free from the power and control of her husband. Strong agreed to give his note to the complainant for her share of the purchase money, payable in a few months there‑ after. She executed and acknowledged the deed, and Strong gave her the note for $1000 in pursuance of the agreement. She put the note into the hands of Pellet, her son-in-law, as her trustee, to receive the money of Strong when it be‑ came due, and to put it out at interest for her separate use. An arrangement was afterwards made between Pellet and Strong, with the sanction of the complainant, by which $600 of the debt was paid over to J. M. D. Carr, by way of loan to him, to be secured by bond and mortgage, for the use of the complainant. A bond and mortgage was accordingly taken by Pellet from Carr, but in the name of the complainant; and the residue of the $1000 was also settled between Strong and Pellet as the trustee of Mrs. Garlick. The complainant also alleges, that she having been compelled to leave her hus‑ band on account of his intemperance and other bad conduct, he assigned the bond and mortgage of Carr to the defendant Strong, who has given Carr notice not to pay it to her trus‑ tee, and claims to recover it for his own use. It is well set‑ tled that a post-nuptial agreement between the husband and wife, by which property is set apart for her separate use, will be sustained in equity though void at law. (*Atherly on Mar. Sett.* 161. 2 *Kent's Comm.* 166.) The relinquishment of the dower in this case was a sufficient consideration to support this agreement on the part of the husband. (*Taylor* v. *Moore,* 1 *Rand. Rep.* 563.) Although as against creditors, whose debts existed at the time, post-nuptial agreements will not be permitted to stand beyond the value of the consideration, that principle cannot be applied to this case, which appears to be an attempt on the part of these defendants to defraud the wife

of the monies to which she is equitably entitled under this agreement. The demurrer on the record cannot therefore be allowed.

The demurrer *ore tenus*, however, is well taken; as the wife cannot be permitted to sue except by her next friend. If the defendants cannot sustain the demurrer on the record, they may demur *ore tenus;* but availing themselves of that right, they must pay the costs of the demurrer on the record. This was so held by Lord Eldon in the case of *The Attorney-General* v. *Brown,* (1 *Swanst. Rep.* 288,) and by this court in the recent case of *Robinson* v. *Smith and others,* decided in April last.(a) The complainant is also to be allowed to amend by substituting a proper and responsible person as her next friend to prosecute this suit. And if she does not so amend within thirty days after payment by the defendant of the costs of the demurrer, the bill must be dismissed. In that case, however, it must be dismissed without costs; as a decree for costs cannot be made against the wife in favor of her husband.

