BYRD L. PATRICK

v.

ELIZABETH PATRICK.

1. FRAUDULENT CONVEYANCES. A settlement made by a husband upon his wife, for a valuable consideration, and without fraud, will be sustained as against existing creditors of the husband.

2. In such case, it is a sufficient consideration for a settlement, that the wife parts with her dower or other estate, or agrees to create a charge thereon for the benefit of her husband; but the value of the estate parted with must be such as to bear a reasonable proportion to the value of the thing settled upon her.

3. But if the value of the property settled exceeds the value of the estate of the wife parted with, the settlement should be set aside as to the excess only, and supported as to the residue.

4. Even a voluntary settlement by a husband on his wife will be sustained as against creditors, unless the circumstances in the case, other than the fact of indebtedness of the husband, justly create a presumption of fraud, actual or constructive, and the direct tendency of the settlement is to impair the rights of creditors.

5. Mere indebtedness of the husband, at the time of making a settlement upon his wife, will not, *per se*, establish that the settlement is void, but it must also be shown that the husband was insolvent, or that the settlement had a direct tendency to impair the rights of creditors.

APPEAL from the Circuit Court of White county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

Messrs. CREBS & CONGER, for the appellant.

Messrs. POLLOCK & KELLER, and Messrs. McDOWELL & McCLINTOCK, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This bill was filed in the court below, by appellant, against appellee and her husband, George Patrick, who is since deceased, for the purpose of perfecting appellant's title to certain town lots in Carmi, and declaring the title of appellee therein void.

The cause was heard on bill, answer and proofs, and the court decreed that the bill be dismissed.

The substantial allegations of the bill are, that, in October, 1857, appellant and plaintiff's said husband, while doing business together, under the firm name of George Patrick & Co., became indebted for goods and merchandise sold and delivered to them by the firm of J. C. Jewell & Co., for which they executed the promissory note of the firm; that, in the spring of 1858, the co-partnership between appellant and George Patrick was dissolved, by mutual consent, and, by agreement between the parties then made, George Patrick

assumed the payment of all debts which the firm owed; that, in the month of September, 1868, one Converse Clement, being the owner of the promissory note executed by George Patrick & Co. to J. C. Jewell & Co., instituted suit thereon against appellant and George Patrick, in the Circuit Court of the United States for the Southern District of Illinois, upon which he obtained judgment against them, at the June term, 1869, of that court, for the sum of $2588.23 and costs; that a *fieri facias* thereon was issued, which was, on the 20th day of August, 1869, levied on lots No. 62, 49, 61, 47, 48, 93, 94, 107 and 108, in Carmi, as the property of George Patrick, and the same were duly advertised, and sold to satisfy the writ on the 15th day of November, 1869; and appellant became the purchaser of the lots at that sale, and received a deed therefor from the United States Marshal, on the 14th day of March, 1871.

It is further alleged that, before appellant received his deed, lots 93, 94, 107 and 108 were redeemed, and no title is claimed as to them, although they are included in the Marshal's deed; that, on the 12th day of March, 1869, George Patrick was also the owner of lot 65 and the north-east half of lot 74, in Carmi, which were then worth $5000; and, on the same day, he and his wife, the appellee, conveyed this property to John D. Martin, for the consideration of $5000; that, in part payment of said sum of $5000, Martin paid to Mrs. Lucy H. Robinson $3350, who then, and solely in consideration thereof, conveyed to appellee the lots 62, 49, 61, 47 and 48, in Carmi, being all the lots included in the Marshal's deed which were not redeemed.

It is charged that the true and only consideration paid to Mrs. Robinson for the lots was the $3350 paid her by Martin, which was paid by direction of George Patrick; that the money thus paid belonged to George Patrick; that appellee paid no part of the purchase money for the property, and the deed therefor to appellee was made without any consideration moving from her, and in fraud of any and all creditors of

George Patrick; that the true and equitable title to said lots was, by virtue of such purchase, in George Patrick; that appellant obtained the same by virtue of his purchase at the Marshal's sale, and his deed therefor, and that the claim of appellee to the property is in fraud of appellant's rights, and a cloud upon his title. The prayer is, that appellant's title be perfected to this property, and that appellee's title thereto be declared void, etc.

Appellee answered, admitting the partnership and dissolution thereof, as charged in the bill, but denying that George Patrick assumed the payment of the partnership debts. She admits the judgment in favor of Clement against appellant and George Patrick, for the amount alleged in the bill; that execution issued thereon, and was levied on the lots, as alleged in the bill, but she charges that the levy was made by the express direction of appellant. She admits the lots were sold by the Marshal, and bid off by appellant, but denies that any of them, at the time of the levy and sale, belonged to George Patrick. She alleges that lots 93, 94, 107 and 108, were the property of one Byrd L. Patrick, Jr., now deceased, and that lots 47, 48, 49, 61 and 62, were the property of appellee, at that time; and of all which appellant had notice.

Appellee admits that she and her husband, George Patrick, on the 12th of March, 1869, sold and conveyed lot 65 and the north-east half of lot 74, in Carmi (a portion of the buildings thereon then being occupied by them as a homestead), to John D. Martin, for $5000—which was no more than the reasonable value of the property—the rental value of which being $500 or $600 per annum. She alleges the consideration, agreed upon between herself and husband, of her signing the deed to Martin, and relinquishing her right of dower and homestead to the property, was, that Martin should pay to Lucy H. Robinson $3350 of the $5000, being the purchase money for said lots 47, 48, 49, 61 and 62; and that, upon his doing which, the property was conveyed to her. She denies the property was conveyed to her for the purpose

of defrauding the creditors of George Patrick, but alleges that the transaction was in good faith. She also alleges that, shortly after the conveyance of the lots to her, she, with her family, entered upon the same, and they have ever since occupied and claimed them as their homestead. In conclusion, she denies all confederacy, as charged in the bill, and reasserts her title to the property.

The evidence clearly shows that, by the agreement between appellant and George Patrick, on dissolution of their partnership, the latter assumed the payment of all partnership debts, in which the note to J. C. Jewell & Co., upon which Clement subsequently obtained judgment, was included.

The only question to be considered relates to the title, or claim, of appellee to the lots 47, 48, 49, 61 and 62. There is no evidence that George Patrick was insolvent at the time of the sale to John D. Martin and the conveyance of Mrs. Robinson to appellee. Whether he did or did not have other property, at that time, than that conveyed to Martin, is not shown. There is nothing tending to impeach the fairness of the sale to Martin.

Appellee swears that, prior to the sale to Martin, she and her husband were residing on that property; that she objected to signing the deed; that her husband was dissipated in his habits, and she was unwilling to give up the property until he agreed to have the property subsequently purchased of Mrs. Robinson conveyed to her for a home for herself and children. She, at the time of her husband's death, which occurred on the 21st of July, 1871, had six children of her husband—three by a former marriage of his and three of her own—residing with her as members of her family, on the property conveyed to her by Mrs. Robinson, and they were then of the respective ages of 20, 17, 13, 7 and 4 years; and she shows that she and her family have occupied the property as a homestead since March, 1869. No evidence was introduced tending to contradict her statement as to the consideration for which she relinquished her right of dower and home-

stead in the property conveyed to Martin, or that they were worth less than the consideration she claims to have demanded and received. It is true, Martin knew nothing of this agreement, for he only talked with her husband; but there was no reason why he should have been privy to it. He was buying the complete title to the property, and was not, therefore, interested in knowing what was to be retained by the husband, or what should be by him settled upon his wife.

If we may regard this as a settlement for a valuable consideration, it is clear it can be upheld. It is said in 2 Kent's Coms. (8th ed.) 166, side p. 174: "The settlement made after marriage, between the husband and wife, may be good, provided the settlor has received a fair and reasonable consideration in value for the thing settled, so as to repel the presumption of fraud. It is a sufficient consideration, to support such a settlement, that the wife relinquishes her own estate, or agrees to make a charge upon it, for the benefit of her husband, or even if she agrees to part with a contingent interest; but the amount of the consideration must be such as to bear a reasonable proportion to the value of the thing settled, and, when valid, these post nuptial settlements will prevail against existing creditors and subsequent purchasers."

In *Taylor* v. *Moore*, 2 Randolph, 563, it was held if a married woman relinquishes dower in lands, under a promise that other property shall be settled on her as a compensation, such settlement will be good, though made after the relinquishment; but if the value of the property settled exceeds the value of the dower relinquished, the deed should be set aside as to the excess, and supported as to the residue. This is approved in *Garlick* v. *Strong*, 3 Paige, 440; and the same doctrine is also announced in *McCann* v. *Letcher*, 8 B. Monroe, 326; *Hunt* v. *Depruy*, 11 id. 286; *Marshall* v. *McDaniel*, 8 id. 175; *Marshall & Spears* v. *Hutchinson et al.* 5 id. 298; *Wood* v. *Crothy et al.* 4 Met. (Ky.) 59; *Bullard* v. *Briggs*, 7 Pick. 533; *Nims* v. *Bigelow et al.* 45 N. H. 343; *W. and M. Col.* v.

*Rowell et al.* 12 Gratt. 372; *Harrison et al.* v. *Carroll et al.* 11 Leigh, 476; *Hollowell et al.* v. *Simonson*, 21 Ind. 398.

It follows, then, there is no ground upon which appellee's title to this property can be disturbed, even by existing creditors, except to the extent of any excess in value, if any has been proved, which it may have possessed, beyond that of appellee's dower and homestead rights in the property conveyed to Martin. In our opinion, neither the allegations and prayer of the bill, nor the proofs, justify a decree in favor of appellant, on this hypothesis.

But if we were to consider the conveyance by Mrs. Robinson, to appellee, as purely a voluntary settlement on her by her husband, inasmuch as there is no allegation in the bill that her husband was then insolvent, and it is not shown that the conveyance had a direct tendency to impair the rights of creditors, there could be no recovery. The rule recognized by this court, following the current of authority, is, " that mere indebtedness, at the time, will not, *per se*, establish that a voluntary conveyance was void, even as to existing creditors, unless the other circumstances of the case justly create a presumption of fraud, actual or constructive, from the condition, state and rank of the parties, and the direct tendency of the conveyance to impair the rights of creditors." *Moritz* v. *Hoffman*, 35 Ill. 554; *Sweeney et ux.* v. *Damron et al.* 47 id. 450; *Gridley* v. *Watson*, 53 id. 186.

We see no cause to disturb the decree below, and it is therefore affirmed.

*Decree affirmed.*