## CHARLES McCAFFREY

### v.

## CHARLES B. DUSTIN, ADMINISTRATOR.

*Insolvency—Fraudulent Sale—Negotiable Instruments—Note—Garnishment.*

1. A person, insolvent when he sells certain property, can not, as against his creditors, make a gift to his wife of notes given upon such sale, nor can he invest her with title to them by way of a settlement in her favor, except for a valuable consideration.

2. While a wife may refuse to execute a deed except on condition that a portion of the purchase price be paid or secured to her, where the evidence fails to show that she demanded it to be done, or that it was done as compensation to her for her possible interest in the land, her release of her right of dower therein can not be looked upon as constituting such consideration.

3. Where purchase money notes are made payable to the wife, by the mere voluntary act of her insolvent husband, the grantor, it is the presump-

tion of the law that this was done with fraudulent intent as to his creditors, and is therefore void as to them.

4.   One who buys a note after its maturity, takes it subject to all equities and defenses existing between the original parties to the instrument. A past due note is already dishonored and comes to one about to buy it, tainted with suspicion and discredited upon its face.   A person buying it, takes it subject to any right acquired by an attaching creditor by garnisheeing the maker.

5.   An indorsement without date is presumed to have been made before the maturity of the note, but this is a *prima facie* and not a conclusive presumption, and may be rebutted by evidence. To so rebut, it is competent to show that the note remained the property of the payee after its maturity, and the acts or declarations of the payee while having possession of the note, as to its ownership, are admissible to rebut this legal presumption.

6.   The purchaser of a note, due and dishonored when offered to him for sale, is in duty bound to make inquiry as to the rights of the former holder and the liability of the maker, and he is chargeable with notice of all he could have learned had he made inquiry, should he fail to do so.

[Opinion filed January 30, 1892.]

Appeal from the Circuit Court of Pike County; the Hon. C. J. Scofield, Judge, presiding.

Messrs. Colvin & Hess and Orr & Crawford, for appellant.

Messrs. Harry Higbee and Doocy & Bush, for appellee.

Boggs, J.   On the first day of the November term, 1887, of the Circuit Court of Pike County, Sarah B. Dustin obtained a judgment against one G. J. Shaw for $517.33 and costs.

Five days before the commencement of the court, Shaw, who was then insolvent and indebted to a number of persons besides Mrs. Dustin, conveyed a farm to Isaac Barton for the sum of $4,400, which sum was paid in the following manner:

Barton assumed to pay mortgages on the farm to the amount of $2,429, and surrendered to Shaw notes due him from Shaw amounting to $400, and for the remainder of the purchase price of the farm executed his two notes, one for $571, due October 27, 1887, the other for $1,000, due October 27, 1888.

These two notes at the request of Shaw were made payable to his wife, Sophia Shaw. An execution issued on the judgment was returned, "No property found." The necessary affidavit was at once filed, and garnishee summons for Barton and Sophia Shaw issued, returnable to the following April term of the court. This summons was served on Barton and Mrs. Shaw on the 7th day of November, 1887.

The note for $571 given by Barton was then past due and in the hands of Sophia or G. J. Shaw. The latter had the note and endeavored to sell it in January and also on the first of February, 1888. On the 2d day of February, 1888, the appellant purchased the note from W. A. Shaw, a son of G. J. and Sophia Shaw.

It was then indorsed without date by Sophia Shaw, and some days after its delivery to appellant, W. A. Shaw also indorsed it.

Garnishee summons for appellant was sued out and served upon him, and at the April term of court the issues as to all the garnishees were consolidated and submitted to a jury, the result being a verdict and judgment against Barton in favor of the administrator of Sarah B. Dustin, then deceased, for the amount of the judgment in her favor against Shaw, and in favor of the appellant for the remainder of the note. From this judgment the appellant perfected this appeal to this court.

G. J. Shaw was insolvent when he sold the farm to Barton. He could not, therefore, as against his creditors, make a gift to his wife of the two notes, nor could he invest her with title to them by way of a settlement in her favor, except for a valuable consideration. Schouler on Husband and Wife, Secs. 373–4; Patrick v. Patrick, 77 Ill. 555; Moritz v. Hoffman, 35 Ill. 553.

Appellant contends that the release by Mrs. Shaw of her contingent right of dower in the land sold, constituted such consideration. No doubt a wife may refuse to execute a deed except on condition that a portion of the purchase price be paid or secured to her, but the evidence fails to show that Mrs. Shaw demanded this to be done, or that it was done as compensation to her for her possible interest in the land. Upon

the contrary the jury were amply warranted by the evidence in arriving at the conclusion that she was named as payee in the notes for the purpose of placing them beyond the reach of the creditors of her husband and as a mere guise to perpetrate a fraud. All of the circumstances of the transaction as disclosed in the evidence justly raised this presumption of fraud, and the direct effect of these acts of Shaw and his wife was to secrete this property from his creditors. Aside from these notes Shaw had no property from which payment of his debts could be enforced. The notes having been made payable to the wife by the mere voluntary act of the insolvent husband, it is the presumption of the law that this was done with fraudulent intent as to creditors of the husband and is therefore void as to such creditors. Moritz v. Hoffman, 35 Ill. 553.

It is then to be considered that as to creditors, Barton's indebtedness upon the note in question was really to G. J. Shaw.

Such was the true situation on the 7th day of November, 1887, when Barton was garnisheed by Sarah B. Dustin. The note was then past due and in the hands of G. J. Shaw or Sophia Shaw. It is the uncontradicted proof that G. J. Shaw had the note at different periods after that time. Had Barton been sued upon the note by either G. J. or Sophia Shaw, he could have successfully pleaded the fact that he had been garnisheed by the appellee, Dustin. The plea, good against either of them, is equally good against the appellant, McCaffrey, as either G. J. or Sophia held the note after it fell due and when Barton was served with the garnishee summons.

It is an elementary rule, that one who buys a note after its maturity, takes it subject to all equities and defenses existing between the original parties to the instrument. A past due note is already dishonored and comes to one about to buy it, tainted with suspicion and discredited upon its face. If he buys it, he becomes its owner subject to all existing equities and rights of others including the right acquired by an attaching creditor by garnisheeing the maker. Snider v. Ridgeway, 49 Ill. 522; Waples on Attachment, p. 208; and

in support of the same principle see Patton v. Graves, 67 Ill. 164. It is true the note came to McCaffrey bearing the indorsement of Sophia Shaw not dated, and further it is true that an indorsement without date is presumed to have been made before the maturity of the note. This is, however, a *prima facie*, not a conclusive presumption, and may be rebutted by evidence. To rebut this presumption, it is competent to show that the note remained the property of the payee after its maturity, and the acts or declarations of the payee while having possession of the note, as to its ownership, are admissible to rebut this legal presumption. 2 Parsons on Notes and Bills, 9, 10.

The evidence shows that G. J. Shaw was offering the note for sale in January and on the 1st of February, long after it was due. G. W. Schwartz testified that the appellant told him that William Shaw said he was selling the note for his mother (Sophia).

Peter Higgins testified that appellant told him that Sophia Shaw owned the note he bought. The appellant testified that W. A. Shaw did not indorse the note when he bought it, but that he procured Shaw to indorse it some days after the purchase, because he heard there was likely to be trouble about it. The evidence warranted the jury in finding not only that the note was not indorsed to W. A. Shaw until after it was due, but also after Barker was garnisheed, and that the indorsement when made was but a fraudulent pretense and not a *bona fide* transfer of right of property in the note.

The evidence also justified the conclusion that the appellant, McCaffrey, understood that the note was the property of Sophia Shaw, and that William Shaw was merely selling it for her. It is not contended, as appellant supposes, that the service of the garnishee summons created a lien on the note.

The note was due and dishonored when offered to him for sale. This imposed upon him the duty of making inquiry as to the rights of the former holder, and the liability of the maker, and he is chargeable with notice of all he could have learned upon inquiry of Barton. Jay v. Reed, 56 Ill. 130; Lord v. Favorite, 29 Ill. 149.

Appellant knew that Barton knew he was financially good;

they were neighbors, and he could have learned upon reasonable inquiry why the note, though some months past due, had not been paid.

Inquiry would have brought to the appellant the knowledge that Barton had not paid the note because he had been garnisheed by a creditor of the owner of the note.

He is therefore not a *bona fide* holder without notice, but holds with notice, because the law charged him with the duty of making inquiry, and with knowledge and notice of all that due inquiry would have developed.

The instructions of the court were framed upon the true theory of the law, and taken all together, fairly state the law of the case. The judgment must be affirmed.

*Judgment affirmed.*