William Mitchell et al., Appellees, v. Amanda Fahler,
A. P. Wylie, Administrator, Connecticut Mutual
Life Insurance Company of Hartford, Connecticut,
Arthur Fahler, Oscar Fahler, Ollie Aitken, Clara
Klinefelter, Sadie Foster, May Insley, Myrtle
Hickok and A. P. Wylie, Administrator of the
Estate of Amanda Fahler, Deceased, Appellants.

### Gen. No. 6,529.

1. FRAUDULENT CONVEYANCES, § 49*—*when conveyance by husband
to wife is not based upon sufficient consideration.* If, at the time of
a conveyance by a husband to his wife of the farm used as a home,
he is in failing circumstances, and financially embarrassed, a con-
sideration consisting of a sum of money advanced 40 years before
as a gift to the wife by her father and turned over to the husband
as the result of the deduction of the amount from the purchase
price of land sold to the husband by the father is insufficient.

2. FRAUDULENT CONVEYANCES, § 89*—*when voluntary conveyance
to wife will be sustained.* A voluntary conveyance to a wife by a
husband will be sustained as against creditors, unless the circum-
stances attending the conveyance justly create a presumption of
fraud, actual or constructive.

3. FRAUDULENT CONVEYANCES, § 267*—*when solvency of debtor at
time of transfer shown.* On a creditors' bill to subject land con-
veyed by the debtor to his wife to the payment of the husband's
debts, evidence *held* sufficient to show that the debtor was solvent
at the time of the transfer.

4. FRAUDULENT CONVEYANCES, § 242*—*when presumed that debtor
paid purchase price of land.* On a creditors' bill to subject land
conveyed by a debtor to his wife to the payment of the husband's
debts, in determining the question of solvency at the time of
transfer, it will be presumed that the debtor paid the purchase
price of land bought by him, in the absence of any evidence to the
contrary.

5. FRAUDULENT CONVEYANCES, § 52*—*when conveyance by husband
to wife not invalid as against creditors.* If a conveyance by a hus-
band to his wife of land is valid as against creditors at the time
it is made, it does not become invalid at a later time because the
debtor becomes insolvent and is so at the time of his death.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

Appeal from the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded with directions. Opinion filed April 9, 1918. Rehearing denied and opinion slightly modified May 14, 1918. *Certiorari* denied by Supreme Court (making opinion final).

GEORGE GLEIM and H. M. KELLY, for appellants.

R. D. MILLS, for appellees.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

The appellees, William Mitchell, William Kreiser, Wilhelmina Short and Sophia Geft, as creditors of the estate of John Fahler, deceased, filed a creditors' bill in the Circuit Court of La Salle county against Amanda Fahler and A. P. Wylie, administrator of the estate of John Fahler, deceased, alleging that their respective claims against said estate had been allowed and were in judgment, and that the estate was insolvent; and that John Fahler, deceased, while indebted to the appellees in the total sum of $4,500, on March 6, 1908, transferred a certain farm containing 80 acres to his wife, Amanda Fahler, by means of certain conveyances made to William Hickok and from Hickok to said Amanda Fahler, the wife of said deceased, for a pretended consideration of $10,000; and that these conveyances were made in fraud of rights of the creditors of said John Fahler, deceased, and made with the intention of hindering and delaying the creditors of said deceased from obtaining their just demands; that there was in fact no consideration paid for the transfer of said property to said wife; and that the said deceased was indebted to other persons, far in excess of the value of the property which he then retained for himself; and that at the time of said conveyances he was possessed of little or no unincumbered property; and that there were insufficient assets in his estate to pay the claim of appellees. To this bill

Amanda Fahler filed her answer, admitting the insolvency of John Fahler's estate, and the allowance of appellees' claims, and the making of the conveyances in question, but denying that the transfer was made to hinder, delay or defraud appellees, or any other creditors, out of their just dues, and denying that John Fahler at the time of the conveyances in question was indebted in a sum in excess of the value of property and money which Fahler had retained for himself after the making of the conveyances referred to; and denying that Fahler was financially embarrassed at that time; and averring that he was at that time solvent, and that he held sufficient property out of which any claim that he owed might have been made, and for a long time thereafter. Afterwards, on April 8, 1916, Amanda Fahler died intestate, and her children and heirs were then made parties to the proceedings by supplemental bill. All the parties to the proceeding having filed their answers, cause was referred to the master who took the evidence and made his report, finding that the transfer of the 80 acres of land to Amanda Fahler by means of the conveyances mentioned was fraudulent as to the rights of the appellees as creditors; that the transfer of the land was without any real or valid consideration; and that such transfer, together with the gifts made by Fahler after such transfer, was responsible for the insolvency of the deceased; and that the land should be subjected to the payment of the claims of the appellees. Exceptions were filed to the master's report, but the exceptions were overruled by the court and a decree was entered in conformity with the findings of the master, setting aside the transfer of the property to the wife, and holding the conveyance by which such transfer was effected to be null and void, and that the property be subjected to the payment of appellees' claims. From this decree an appeal is prosecuted.

It is insisted by the appellants that there was a real

and valuable consideration as a legal basis for the
transfer of the property in question from John Fah-
ler to his wife, Amanda Fahler; that this consideration
was a gift of $1,000 made to John Fahler, deceased,
for the wife by Asa Dowling, the wife's father, who
had deducted that amount for that purpose from the
purchase price of a farm which John Fahler had pur-
chased from him, and that this $1,000, which Fahler
had received for the benefit of, together with the ac-
cumulations of interest and profits, to which the wife
alleged she was entitled, for a period of 40 years,
furnished a sufficient, substantial and valuable consid-
eration for said transfer to her of the property men-
tioned. If, however, Fahler at the time of the convey-
ances in question was in failing circumstances, and
financially embarrassed, the consideration claimed by
the appellants to validate the transfer in question can-
not be considered as available to sustain the legality
of the conveyances, for the reasons stated in *Dillman
v. Nadelhoffer,* 162 Ill. 625. But the vital question in-
volved in this controversy is whether or not there was
any fraud in connection with it, either actual or con-
structive; whether or not the transfer in question was
made with a view to defeating, hindering or delaying
the creditors of John Fahler in collecting their just
demands or claims; and whether or not the transfer
in question left Fahler without sufficient means or
property with which to pay his debts. There is no evi-
dence whatever to show actual fraud, but the evidence
tends to show that Fahler made this transfer of prop-
erty, which was the home of the family, to make a
proper provision for his wife, as well as to satisfy the
demands which she claimed to hold against him on
the basis of the $1,000 gift mentioned. While these
matters cannot be regarded as furnishing a legally
sufficient consideration for the transfer of the property
if the then-existing creditors were hindered or delayed
in the collection of their judgments or Fahler was

thereby financially embarrassed, yet, if sufficient property remained in his hands to satisfy the claims and demands of his creditors, then the transfer should not be held illegal or fraudulent. A conveyance from husband to wife will be legally upheld when there is no attempt to defraud creditors, and it is equitable and just that the title should be placed in the wife at the time of the conveyance, even though the husband afterwards becomes insolvent. *Behrens v. Steidley,* 198 Ill. 303. A voluntary conveyance to a wife may be sustained as against creditors, unless the circumstances attending the conveyance justly create a presumption of fraud, actual or constructive. *Faloon v. McIntyre,* 118 Ill. 292; *Bittinger v. Kasten,* 111 Ill. 260; *Patrick v. Patrick,* 77 Ill. 555.

In this case the proof is clear that at the time of the conveyance in question John Fahler was not financially embarrassed; his credit was good; he was transacting business in the usual way, paying his debts and contracting new debts in the usual way; buying and selling goods, and trading in real and personal property after the conveyance practically in the same way as before, and there is no evidence that any of his creditors, who required payment of their claims, failed to collect them. His real estate holdings were large and quite valuable. He owned a farm called "Hill 80" in La Salle county, which the evidence shows had a market value of $175 per acre, though it was subsequently sold for $12,000. This farm has a mortgage on it of $7,000, but even on the basis of the sale price, the value of his equity in the farm was $5,000. He also owned a farm known as the "Minehart 80," which the evidence shows had a market value at the time of the conveyance of $125 per acre, in which his equity amounted to at least $7,500. He also owned improved lots in the City of Ottawa, which the evidence shows were worth $6,500 above the mortgage incumbrance thereon. He owned property in Troy Grove, referred to as the

barber shop property, which was reasonably worth at least $800. He also owned 13 acres in the northwest quarter of section 35, in La Salle county, which the evidence shows were reasonably worth $3,000. This property was subject to a mortgage of $2,000, leaving an equity of $1,000. He also owned 200 acres in McHenry county, which the evidence shows were worth $20,000, but which were subject to an incumbrance of $9,000, thus leaving an equity reasonably worth $11,000. The total value of the Fahler real estate holdings at the time of the conveyance in question, as disclosed by the evidence exclusive of the property conveyed, was over $31,000, and in addition thereto he owned personal property which was worth at least $3,400. The total indebtedness shown, at that time, was slightly in excess of $17,000. It is apparent, therefore, that Fahler had an abundance of assets to meet all his liabilities after transferring the property in question to his wife. The proof of his solvency at the time of the conveyance, therefore, is complete and conclusive. The appellees claim, however, that on the question of his financial solvency at the time of the transfer of the property to his wife, the court should take into consideration that afterwards Fahler sold the so-called "Hill 80"; and also subsequently mortgaged the "Minehart 80" for $5,000. There is nothing in the record to indicate that the subsequent sale of the "Hill 80" had any connection whatever with the transfer of the property to his wife; nor that the mortgage of the "Minehart 80" had any connection therewith; nor are these transactions in any way tainted with fraud, but the evidence tends to show that the transactions were made in the ordinary and usual course of his business as a real estate trader and business man. A written agreement was introduced in evidence entered into by Fahler, October 7, 1903, for the purchase of 160 acres of the McHenry county land, and it appears from the written agree-

ment that as a part of the consideration for the purchase of this land Fahler assumed to pay a mortgage of $8,000, which became due March 1, 1907. Appellees argue that this mortgage should still be counted as forming a part of Fahler's indebtedness at the time of the transfer in question because appellants offered no proof that that mortgage had been paid, as required by the terms of the agreement. There is no legal basis for the assumption that Fahler did not carry out his agreement of purchase, or that he failed to pay the consideration which he agreed to pay for the land at the time it was due, and at the time he had agreed to pay it. In the same agreement for the purchase of the McHenry land, in which he agreed to pay the mortgage referred to, he had also agreed to pay $3,700 on March 4, 1904, as part of the consideration. There was no evidence offered of the payment of this amount; and, if appellees' argument is sound, this $3,700 should also be counted as a part of an existing indebtedness of John Fahler at the time of the transfer in question. We know of no presumption of law to the effect that it must be assumed that a person does not keep his agreements, or does not meet his obligations. In the absence of any evidence to the contrary, we think the presumption would be that John Fahler did carry out his agreement to pay, and that he paid the purchase price of the land in question as he had stipulated to do. He became the owner of the land, and the reasonable assumption is that he did so by carrying out and fulfilling the conditions under which the ownership was to be given him.

Inasmuch as the evidence conclusively shows that at the time of the conveyance in question John Fahler was financially solvent, and that the conveyance was made for a proper purpose and without any intent to defraud anybody, it must be regarded as valid; and, if it was valid at the time it was made, it did not become invalid because afterwards and in the years

which followed Fahler finally became insolvent and was insolvent at the time of his death. The decree is therefore reversed and the cause remanded with instructions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*