SCRIVENOR, &c.    Wherefore, the judgment is reversed, and the cause re-
      *vs*
SCRIVENOR, &c    manded for a new trial in conformity with this opinion.

Cates & Lindsey and J. C. Walker for appellant; Har-
lan & Craddock for appellee.

CHANCERY.            Scrivenor, &c. *vs* Scrivenor, &c.

Case 101.                ERROR TO THE ESTILL CIRCUIT.

*Chancery jurisdiction.    Fraudulent conveyances.*

June 8.        CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.        IN 1834, when B. E. Scrivenor conveyed his land to
his father, James Scrivenor, by absolute deed, he was
a trader, purchasing hogs on credit, borrowing money,
and inducing others to become his security.   The deed
though absolute, was not founded on a real purchase and
sale, but was intended only to indemnify the grantee
against loss as the grantor's surety.   It was not recorded
nor lodged for record until six years after its execution,
when the grantor had become greatly indebted, and was
probably insolvent.   These parties, though admitting in
answer to a direct charge that the deed was intended on-
ly as an indemnity, do not attempt to specify the liabili-
ties which it was intended originally to secure, nor those
which were subsequently incurred in faith of it; and do
not state nor attempt by proof to designate the debts,
loans, liabilities or assumptions of debts which were
finally satisfied by the land, and might form a considera-
tion for its purchase ; but content themselves with saying
that the deed was intended to indemnify the grantee,
James, from loss as the grantor's surety, and that the
grantee has paid for the grantor "as much on those sure-
tyships and otherwise, as the consideration named in the
deed, and as much as the land was worth, which never
was refunded to him."   Several debts and liabilities, some
of which existed as early as 1837 and 1838, were secur-
ed by formal mortgage upon other property, between the
same parties, and dated only a few months after the deed
for the land was proved and recorded.   And there is

nothing to show, nor is it even alledged, that these debts and liabilities are different from, or do not include those referred to in the answer, as constituting payment for the land. It is, moreover, conclusively shown that notwithstanding the execution of the deed, and until some time after these suits were brought in 1841, the grantor remained in possession of the land, using and apparently claiming it as his own by listing it for taxation and otherwise, just as he did before; and that he continued to purchase on credit and to borrow and become indebted until his credit, doubtless founded in part upon the possession and apparent ownership of this land, was entirely lost. The deed has thus been, evidently, a means of deceiving and defrauding others; and there is some ground to infer that it was originally so intended. At any rate, it has by being so long kept secret, and finally put upon record after the grantor had become embarrassed, and without any designation of the real consideration, been made the instrument of fraud against the creditors of the grantor. And if it can be deemed good to any extent as an indemnity or mortgage, it seems to be fraudulent as an absolute conveyance.

This, as we think, gives the Chancellor, under the act of 1838, (3 *Stat. Law*, 176,) jurisdiction in behalf of general creditors to investigate the fraud, ascertain the demands due to the complaining creditors, and subject the land so far as is equitable, to the satisfaction of their debts, even though the grantee should be entitled to the benefit of the deed as a mortgage and ultimate security for any just demands not actually secured by the other mortgage, and which may appear to have been really and in good faith, intended to be covered by this deed.

We are of opinion, therefore, that the Court erred in dismissing the several bills so far as they seek to subject the land to the demands of the complainants respectively, and that the disposition of the case as to the land, should be postponed to the final hearing, when upon ascertainment of the several demands of the complainants and of James Scrivener against the defendant, B. E. Scrivener, and of the extent of the indemnity furnished by the other mortgage, and of all facts pertaining to the subject,

A son, a trader, made to his father an absolute deed for his land, intended as an indemnity, which was held up and not recorded for six years, whilst the son enjoyed the land and continued to trade, and became insolvent, when the deed was recorded. Held that the creditors of the son might by bill in equity, under the statute of 1838, (*St. Law*, 116,) subject the land to their demands, even tho' the grantee might be entitled to indemnity for suretyship and advances under the deed as a mortgage.

MATTINGLY'S HS.   it may be advisedly determined how far James Scrivener
vs            should be allowed any preference in the appropriation of
CORBIT.         the land.

Wherefore, the decree is reversed and the cause re-
manded for further proceedings consistent with this opin-
ion.

*S. Noland* for plaintiffs ; *Turner* for defendants.