ANN HUNT, Respondent, *v.* THOMAS A. JOHNSON, FREDERICK E. BARNARD and CHARLES C. CLARKE, Executors, etc., of ALVAH HUNT, deceased, ABBY H..JILLSON and ALLEN B. JILLSON, her husband, SARAH H. BLAIR and CHARLES E. BLAIR, her husband, BETSEY H. BATES, NATHANIEL HUNT and ALVAH J. HUNT, Appellants.

A conveyance of real estate by deed from a husband to his wife, intended as a gift *in presenti*, though void at law, may be sustained and enforced in equity.

The relation of husband to wife, and his duty to provide for her an assured and comfortable support, are a meritorious consideration which will uphold such a gift, except as against creditors.

The words, "I hereby give, bequeath, transfer and set over to my wife" certain lands, "and hereby bind myself legally to execute to my said wife a good and sufficient deed" thereof, express an executed contract, and are sufficient to constitute a grant.

Although the printed statutes of another State are presumptive evidence of the laws thereof, such evidence must be produced at the trial, and cannot be introduced in the appellate court.

(Argued September 21st, 1870; decided December 27th, 1870.)

APPEAL from the judgment of the Supreme Court, rendered upon a submission to the General Term in the sixth district, under section 372 of the Code of Procedure.

Ann Hunt, the respondent, and Thomas A. Johnson, and the other executors of Alvah Hunt, deceased, and Nathaniel

Hunt, who has since deceased, united in a written statement of facts, and submitted their controversy to the General Term of the Supreme Court, pursuant to section 372 of the Code of Procedure.

The submission was to determine the rights of the respective parties, under an instrument in writing, made by Alvah Hunt, deceased, and delivered to his wife, Ann Hunt, the plaintiff and respondent, to an equal undivided half of 2,400 acres of land on the Des Moines river, in the State of Iowa. Mrs. Hunt claimed the lands under this instrument, in fee. Nathaniel Hunt, who has died since the submission, was the residuary legatee of his brother, Alvah Hunt, and claimed that the lands belonged to the estate. The executors desired and invoked the instructions and judgment of the court. The real contest, at the time of the submission to the Supreme Court, was between Mrs. Hunt and Nathaniel Hunt, the brother and residuary legatee. Nathaniel Hunt died after the judgment of the Supreme Court herein; and on the 14th of January, 1868, this court made an order by which his successors in interest are made parties in his place.

The statement of facts, among other things, sets forth that Alvah Hunt, in March, 1825, intermarried with Ann Birdsall, and that they lived happily in the marriage relation until his death in October, 1858. He was for many years a prosperous merchant, and from 1838 to 1842, a State senator, and subsequently treasurer of the State. His estate, not including the Des Moines lands, was estimated at about $27,000, and the annual income to Mrs. Hunt under his will was about $1,600. In October, 1852, Alvah Hunt drew his own will, which was admitted to probate. By the second section of his will he provided that his wife have the entire use and occupation of his house and lot in the village of Greene; and by the third section he further provided that his wife, during her life, have the net revenue of his real and personal estate; the remainder to go to his brother, Nathaniel Hunt, if living; if not living, then to the surviving children of Nathaniel Hunt. By the eighth section it is provided that if the net

income is insufficient for her support in a suitable style for and equal to the condition she has before occupied, that then she receive a suitable support " out of income and principal if necessary." By the ninth section, the executors are desired to convert into cash the property and effects " with due regard to the interests of others, holding property jointly " with the testator, to be invested in bond and mortgage.

After making this will Mr. Hunt gave and presented to his wife bonds of a western railroad, believed to be valuable, to the amount of $30,000. These bonds proved to be valueless; and afterward, Mr. Hunt executed the instrument of June 14th, 1858. He had frequently declared it to be his intention to make provision for his wife, in addition to that given by his will.

The plaintiff founds her claim upon an instrument dated the 14th of June, 1858, in the handwriting of her husband, and by him on that day delivered to her, which was in the words following:

" Considering the uncertainty and the vicissitudes of human life, I hereby give, bequeath, transfer and set over to my wife, Ann Hunt, free and clear of all encumbrances, the equal undivided half of a little over twenty-four hundred acres of land now owned by myself and Charles C. Clarke, jointly and severally, and hereby bind myself legally to execute to my said wife a good and sufficient deed of the equal and undivided half of the above described lands, held by myself and Charles C. Clarke, as aforesaid; said lands lying on the Des Moines river, in the State of Iowa. And I also bind myself to execute to my said wife, a good and proper deed of my half of said lands, as soon as said deed is made out, and ready for my signature, by a competent person for drawing up said deed.

" Given under my hand and seal, at New York, this 14th day of June, 1858.

" A. HUNT. [L. S.]

" In presence of C. C. CLARKE."

This instrument was not acknowledged. Its execution was proved by the subscribing witness in 1864.

Mr. Hunt, at his death, left neither creditors, father, mother nor children.

The parties asked the court to determine their several rights, interests and duties.

The court at General Term decided that this instrument, dated the 14th of June, 1858, "was a good, valid, operative, and effective deed of conveyance, upon sufficient consideration," and that thereby Mrs. Hunt was invested with the title to the premises, and the executors were ordered to execute a quitclaim deed thereof to Mrs. Hunt.

Judgment was entered accordingly, and the executors and Nathaniel Hunt appealed to this court.

*Henry R. Mygatt,* for the appellants, as to the validity of the instrument of June 14th, 1858, cited and discussed *Shepard* v. *Shepard* (7 John. Ch., 60); *White* v. *Wager* (25 N. Y., 334); *Antrobus* v. *Smith* (12 Ves., 39); *Edwards* v. *Jones* (1 My. & Cr., 226); *Colman* v. *Sarel* (3 Bro. C. C., 12); *Holloway* v. *Heddington* (8 Sim., 324); 1 Phillimore, 343; *Beatson* v. *Beatson* (12 Sim., 281); *Ward* v. *Andland* (8 Sim., 571); *Cotleen* v. *Missing* (1 Madd., 176); *Colyear* v. *Mulgrave* (2 Keen, 81); *Jefferys* v. *Jefferys* (Cr. & Ph., 138); *Dening* v. *Ware* (22 Beav., 184); *Cunningham* v. *Plunkett* (2 Y. & C., 245); *Pownal* v. *Anderson* (2 Jur. N. S., 857); *Dillon* v. *Coppin* (4 My. & Cr., 647); *Harris* v. *Clark* (3 N. Y., 121); S. C. (2 Barb., 99); *Leitch* v. *Wells* (48 Barb., 654); *Morris* v. *Ward* (36 N. Y., 595); *St. John* v. *Bumpstead* (17 Barb., 100); *Levy* v. *Gadsley* (3 Cranch, 180); *Savage* v. *O'Neil* (42 Barb., 379); Co. Litt., 112*a ;* 112*b ;* Bacon Abr., Baron and Feme C.

*John H. Reynolds,* for the respondent, insisted that the instrument was an executed conveyance, and, although no consideration was expressed one could be proved, citing

*Goodall* v. *Bruce* (2 Hill, 659); 4 Kent, 465, 491; Leading Cases in Equity, 214.

The purpose of making further provision for the wife was a meritorious consideration, citing *Thompson* v. *Attfield*. (1 Vern., 40); *Minturn* v. *Seymour* (4 John. Ch., 498); *Hayes* v. *Kershen* (1 Sandf. Ch., 261); *Dennison* v. *Gochering* (7 Barr, 178); *Shephard* v. *Shephard* '(7 John. Ch., 57); 2 Kent, 146.

If merely voluntary, it is valid against all the world save creditors. (*Jackson* v. *Gurnsey*, 16 John., 189; *Osborn* v. *Moss*, 7 John., 161; *Vilas* v. *Beaumont*, 1 Vern., 100; *Lark* v. *Wilkinson*, 3 Vern., 384.)

If defective at law, it will be enforced in equity as a reasonable post nuptial settlement. (*Shephard* v. *Shephard*, *supra;* *Townsend* v. *Maynard*, 9 Wright, Pa., 198; 1 Bright, Husb. and Wife, 29, 33; *Riley* v. *Riley*, 25 Conn., 154; *Simmons* v. *McElwain*, 26 Barb., 425; *Carpenter* v. *Roe*, 10 N. Y., 230; *Babcock* v. *Elder*, 24 N. Y., 630; 2 Kent, 129–30, 162, 3, 6.)

HUNT, C.   The unity of person between husband and wife is such that neither can grant to the other an estate in possession, remainder or reversion, to take effect in possession during the life of the grantor.   This is a rule of the common law, which has been adhered to in many cases, where the courts have said that they would have been glad to have got rid of it.  (*White* v. *Wager*, 25 N. Y. R., 329, and the numerous cases there cited.)

It is also a general rule of the common law, that to the validity of a deed, a consideration is essential.   *Minturn* v. *Seymour*, 4 J. Ch. R., 500; *Verplanck* v. *Strong*, 12 J. R., 557, and cases *post.*)

It may be conceded also, that the voluntary executory agreement of a party, will not generally be enforced against him.  (*Jefferys* v. *Jefferys*, 1 Craig. & Phillips, 138; *Dillon* v. *Coppin*,4 Mylne. & Craig., 647; *Holloway* v. *Heddington*, 8 Sim. R., 324; Story Eq. *post.*)

The appellants invoke each of these principles in condemnation of Mrs. Hunt's claim in the present case. They insist, that as the deed in question was a transaction directly between the husband and the wife, it is necessarily void. They insist also, that the agreement is executory in its character, and that it is unsupported by any consideration, which the law will recognize.

At the common law, the deed from Mr. Hunt to his wife is invalid. It has an inherent and fatal defect, in that it is a conveyance *in presenti* by the husband to the wife. Can a court of equity relieve against this defect?

The case of *Shepard* v. *Shepard*, decided in this State more than fifty years since, by one of the best equity judges that ever presided in our courts, answers the question in the affirmative. (7 John. C. R., 57.) On the 26th of December, 1808, Hazel Shepard executed and delivered to his wife a deed of a lot of land containing fifty acres. Nine years afterward he executed a deed of the same land to his son. Shepard died in 1819. There were many facts in the case, tending to establish an equity in the wife, although there was no consideration of a pecuniary character, and she filed a bill in equity against the son, asking as one alternative, that he be decreed to release to her his interest in the fifty acre lot. In deciding in favor of the plaintiff's claim, Chancellor KENT says : " The deed from H. S. to the plaintiff was undoubtedly void in law, for the husband cannot make a grant or conveyance directly to his wife, during coverture. (Co. Lit., 3*a*.) And in equity, the courts have frequently refused to lend assistance to such a deed, or to any agreement between them." He then cites, and comments upon several cases to that effect. He proceeds : " It is to be observed, however, that none of these cases were determined strictly and entirely upon the incapacity of the husband to convey to the wife, according to the rule of law ; and they do not preclude the assertion of a right in a court of equity, under certain circumstances, to assert such a conveyance. The court relied upon the staleness of the demand in the first case, and upon the want of

consideration in the second, and upon the extravagance of the gift in the third, as also constituting grounds for the decree; and it is pretty apparent, that if the grant in each case had been no more than a suitable and meritorious provision for the wife, the court would have inclined to assert it." After citing and commenting upon several English cases, in which effect had been given to articles of agreement, made directly between the husband and the wife, he adds : " The consideration for the deed to the wife in the case before me, was very meritorious.     It was natural affection, and to make a sure maintenance for the said Anna S., wife and consort of H. S., in case she should survive him."    After further setting forth the facts, establishing the equity of the case, he finishes that branch of the case in these words : " I conclude accordingly, that the deed from the husband to the wife may, and ought in this case, to be aided and enforced by this court."    (*Shepard* v. *Shepard, supra.*)

The same doctrine is laid down in *Newfolk* v. *Thomson* (3d Edw., Ch. R., 92).    In *Garlick* v. *Strong* (3 Paige, 440) a post nuptial contract between the husband and wife, by which a bond and mortgage was set apart for the use of the wife, was sustained.    To the same effect is *Bullard* v. *Briggs* (7 Pick. R., 533).    In his commentaries (2d vol., 163), Chancellor KENT thus lays down the rule : " Gifts from the husband to the wife may be supported as her separate property, if they be not prejudicial to creditors ; even without the intervention of trustees, and when the husband, after marriage, agreed in writing to settle part of the wife's property upon her, the agreement was held to enure to the benefit of the children, and that the wife herself could not waive it."

Judge STORY says (2 Story Com. Eq., § 1395) : " The doctrine is now firmly settled in equity, that a wife may bestow her separate property, by appointment or otherwise, upon her husband as well as a stranger."    The transaction is, however, to be examined with watchfulness, to guard against undue influence on the part of the husband.

*Rich* v. *Cockell* (9 Ves., 369) sustains the same doctrine. In Clancy on married women, 355, it is thus expressed: "As a married woman can deal and bargain with her husband with respect to her separate estate, so she may deal with a stranger without the privity of her husband." "And a married woman may not only deal with her husband and a stranger with respect to her separate property, but she may sell it to the person who holds it in trust for her." See also the same author, p. 458. See Atherby, on marriage settlements, p. 84, 85 (11 Law Library, new series).

For a full exposition of the English cases on this subject, I refer to White's equity cases, *Ellison* v. *Ellison*, Leading cases in equity (65 Law Library, 216). He says: "After a careful examination of the authorities, Lord Ch. Sugden laid down the rule that the meritorious consideration of providing for a child was sufficient to lead to the enforcement in equity of an executory contract as against the person contracting." After citing the various decisions upon the point, the author concludes: "Considering, then, that the direct decision of Lord Ch. Sugden stands supported by Lord Eldon's recognition of the same principles, and not opposed by any decision whatever, it may be stated as the result of the English authorities that equity will aid a defective transfer, which was intended and meant to be a complete present transfer, and probably will enforce an executory agreement upon the inducement of a meritorious consideration; that is to say, in favor of a wife or child, and against one not standing in those relations as a brother or other connection; but will not interfere between persons standing upon the same meritorious considerations." He adds, that the principle of a meritorious consideration reaches only to the cases of a wife and child; not to collaterals nor to remote descendants.

There are two cases in our own courts which are supposed to be hostile to the theory, that a conveyance between husband and wife can be corrected or enforced. These are *White* v. *Wager* (25 N. Y. R., 328) and *Winans* v. *Peebles* (32 N. Y. R., 423).

In *White* v. *Wager* the question of the equitable interposition of the court did not and could not arise. The action was to recover damages for breach of warranty of title. The plaintiff alleged that no title to the land was transferred to him, because no title was in his grantor. He alleged that no title was in his grantor (the defendant), because he obtained his title by a conveyance directly from his wife; and that by the rules of law a wife could not convey to her husband a title to take effect in possession during her life. The defendant did not attempt apparently to sustain his title by an appeal to the equitable powers of the court; or, if he did, it was in the faintest manner. This power manifestly could be invoked only in a case where the question should arise between the husband or those claiming under him, and those who, except for the deed, would have had the title as heirs of the wife. The latter persons were indispensable parties to a settlement of that question. A disposition of it between the husband and a stranger could not have affected their rights. If allowed to be mooted in a suit with a stranger, it might be decided in one way and upon an understanding of all the facts upon the presentation of the heirs of the wife, another decision might well be reached. The stranger had no right to invoke an equity, as against the heirs of the wife, who were not parties to the suit. It was therefore quite logical that in delivering the opinion of the court, DENIO, J., should have said that "the defective conveyance cannot be aided by the application of equitable principles." *White* v. *Wager* was well decided upon its facts, and that without trenching upon the well settled powers of the court to afford equitable relief in a proper case, and when presented by the parties entitled to ask it.

In *Winans* v. *Peebles*, *supra*, the proper parties were before the court. It was an action by the heirs of the wife (her children by a former marriage) to set aside a conveyance made by her to her husband. The title of the wife was by a deed from a third person, the consideration for which was paid by her father. The conveyance was made by her directly to her

husband, and upon the request of her father, made at the time the property was given to her, and her verbal promise to convey to her husband after her father's death. The court below sustained the conveyance upon principles of equity. The Court of Appeals reversed this judgment, holding the law to have been established to the contrary in *White* v. *Wager*, *supra*. The court say (DAVIS, J.) that the deed from the married woman to her husband was void, and that being wholly without consideration, a court of equity would not interfere to sustain it. It does not appear whether the deed was expressed to be in consideration of love and affection, or whether that was actually the moving consideration. It is simply stated that no consideration was paid by the husband or received by the wife.

That case differs from the present action in this, that it was a conveyance by the wife to the husband; this was by the husband to the wife. At law either conveyance is equally void. They do not necessarily stand upon the same basis in equity. It is the duty of the husband to provide an assured and comfortable support for his wife during his life, and after his death. No duty rests upon the wife to provide for the husband. The customs of the country and the laws of the land look upon her as the party to be aided and sustained by the toil and the wealth of the husband. An application of the husband's property for her comfort is eminently equitable, and has been favored by the courts from their earliest existence. No judge has yet announced that this equity or this favor is to be extended to gifts from the wife to the husband. There is in the nature of things a broad and palpable distinction against an equitable claim in the husband's favor. Upon this distinction the present case may safely rest.

If *Winans* v. *Peebles* is construed to hold, as I think it should not be, that a deed between husband and wife is not capable of reformation in a court of equity under any circumstances, it is against principle and authority. If it is construed to hold that the intention to make a provision for a wife is not a sufficient consideration for such a deed (executed), it

is in hostility to *Shepard* v. *Shepard*, and to the clear current of the English cases. If it is construed to hold merely that such a consideration would not be sufficient to sustain a deed from a wife to her husband, leaving untouched the question of its sufficiency in the case of a deed from the husband to the wife, it does not interfere with my view of the proper decision of the present case.

The court below deemed the case before us a proper one in which to exercise its power of equitable interposition. In this result I concur. Mr. Hunt had a moderate fortune. His wife and himself, for more than thirty years, had lived happily together. He had toiled to accumulate this property. She had exercised a judicious economy in the administration of his household affairs. We may assume that he considered his success in business, and his reputation as a public officer, as due in part at least to the tender affection and the wise counsels of a sensible wife. Few men succeed in any department whose pecuniary affairs are in disorder, or whose domestic relations are in an unhappy state. Mr. Hunt evidently intended that his wife should have every comfort and every advantage which his estate could furnish. Such is the express declaration of his will. Such was his intention when he gave her $30,000 of Western bonds, in addition to the provision made by his will. When he discovered that these bonds had become valueless, he attempted to supply their place in part by a gift of the lands in question. He intended to make a valid conveyance to her of those lands. He died in the belief that he had done so. To remedy his error, to make that effectual which he intended to accomplish, to give to his wife exactly what it was right he should give, and what he supposed he had given, is the plainest dictate of equity.

It is objected to the view I have taken, that the court exercises its power of reformation in these cases only when the husband desires to make a provision for the support and maintenance of his wife during her life, and that it does not extend to the case of a gift where the absolute title is vested

in her. It is further said that the present is the case of a gift simply, and not of a provision for support, because Mr. Hunt had by his will already given his wife the entire income of his property, and if insufficient for her support had authorized the application of the principal to the same purpose. I am not prepared to assent to the correctness of this distinction. In the case of *Shepard*, *supra*, the conveyance was of the fee, and founded upon a desire to make a "sure maintenance." In *Garlick* v. *Strong*, *supra*, the entire interest in the bond and mortgage was decreed to be vested in the wife. In *Bullard* v. *Briggs*, the whole estate was to go to the wife. In the extract from his commentary, *supra*, Ch. KENT speaks of "gifts from the husband to the wife," as to be sustained, not confining his language to usufruct or income. In *Fenner* v. *Taylor* (1 Sim., 169, *supra*), the entire interest in the property was settled on the wife, and so is it in many of the other authorities which I have cited. There is no foundation for the distinction that love and affection to a wife constitute a sufficient consideration for a husband's deed to her, if the deed is expressed to give the title for her maintenance and support, although it is in fee, but if induced by the same affection, but not expressed to be for her maintenance and support, the consideration is insufficient. The distinction is shadowy and baseless.

I cannot acquiesce in giving so narrow a construction to the intention of Mr. Hunt in giving a maintenance and support to his wife. He had given to her, by his will, the entire income of his estate during her life; and if that should prove inadequate to her support in a manner equal to that she had before possessed, resort could be had " to the principal if necessary." Who was to decide how her former and her present style of living corresponded? Who was to decide whether, at any time, a resort to the principal had become a necessity? Not Mrs. Hunt. The executors were to settle this point in the first instance, Mrs. Hunt having a right to resort to the courts to correct their judgment. If he reflected at all upon this point, Mr. Hunt must have desired to avoid

this contingency of a contest between his wife and the executors, and the delay and expenses of a litigation. That he was not satisfied with this provision of the will for her support is quite evident. To make her position more assured, he gave her first the western bonds to the amount of $30,000, notwithstanding, or in addition to the power given already in his will, that she could resort to the principal if necessary. When these failed he gave her, with the same intent, all his interest in the lands in question. It should not be forgotten that he had frequently declared his intention " to make other and further provisions for his wife, in addition to the provisions of the will."

Were the rule limited to deeds made for the support and maintenance of the wife, I should hold this to be one of that class, and should deem it a proper case in which to exercise the equitable power of the court. The term "further provisions," in addition to "the provisions" of the will, clearly point to this conclusion. While these words do not mean simply food or supplies, they show that the idea of support and maintenance, in its extended sense, was in the mind of the donor.

Had the agreement in this case been purely executory, there would have been some difficulty in its reformation within the authority of *Jeffreys* v. *Jeffreys* (1 Craig & Phillips, 138), and *Dillon* v. *Coppin* (4 My. & Craig, 647); 1 Story Eq., § 973, etc. Being intended as a gift to the wife, and the opponent not standing in the confidential relation of a wife or a son, but of a collateral relative, if the rule cited from White's leading equity cases is correct, the instrument would be capable of reformation although purely executory. The one before us was, however, an executed contract. It was a deed sufficient and perfect in its words of transfer. (*Hayes* v. *Kershow* 1 Sand. Ch. R., and cases cited, 261.) If it had been a conveyance to a son instead of a wife, the words "I hereby give, transfer and set over, free and clear of all encumbrances, the one undivided half," etc., would have conveyed a legal title. Indeed, these are the appropriate and

technical words by which an immediate transfer is effected. (4 Kent Com., 492, *m* and *n.*) That the grantor intended thereafter to execute a more formal deed, is no objection to this view of the case. Under both of the classes of cases to which I have referred, this deed is capable of reformation, viz., as being in favor of a wife (no equally meritorious relative contesting), and as being an executed contract.

The appellants made a further point, that the deed is invalid by the laws of Iowa, both upon the general principles heretofore discussed, and for the further alleged reason that a deed is not valid in that State until it is acknowledged by the grantor as his "voluntary act." We have no knowledge that such is the law of Iowa. A statute is offered to be read before us on this appeal, which was not offered to the jury. The amended Code (section 426) declares that the printed statute of another State "shall be admitted by the courts and officers of this State on all occasions as presumptive evidence of such laws, and that the unwritten or common law of every other State may be proved as facts by parol evidence, and the books of reports of cases adjudged in their courts may be admitted as presumptive evidence of the law." The statutes of other States, it has always been held, are to be proved as matters of fact. The Code simplifies the mode of proof by enacting that it may be made by producing a printed volume purporting to be by authority of the State government, in which the statutes are contained. This is made presumptive evidence of its existence. It is, however, proof to be produced on the trial like other proof. It cannot be produced in the appellate court any more than the respondent could produce counter testimony before this court, that such is not the law of Iowa. The Court of Appeals does not sit for that purpose. The point is not before this court, and we are not competent to pass upon it.

Since the hearing before the General Term, Nathaniel Hunt has died, and an order has been entered substituting his surviving children as defendants in this suit. This seems to have been done upon their own motion. They appear before

us as on that motion by a responsible and a respectable counsel. We have only to decide the question presented to us. All other questions will be disposed of by the parties or their counsel as they may arise. (*Hamilton* v. *Wright*, 37 N. Y. R., 502 ; *Jackson* v. *Babcock*, 16 id., 246.)

The judgment of the General Term should be affirmed, without costs to either party.

LEONARD, C. The intent of the deceased to convey appears fully from the written instrument executed by Alvah Hunt, deceased. The words "give, bequeath, transfer and set over," express the same meaning and intention as grant and convey. (4 Kent, 491.) The relation of husband and wife is consideration sufficient to sustain the instrument as a gift, duly executed, as against every one except creditors. (4 Kent, 465.)

This relationship is mentioned in the writing, not as the consideration, indeed, but the fact is acknowledged ; and the consideration may be proved otherwise, whether of blood, marriage or money, although not mentioned. (*Goodall* v. *Bruce*, 2 Hill R., 659.) In the case cited, a deed of conveyance to a grandson, not expressing any consideration, was held good, on parol proof of the relationship, and the intention of the grantor. Alvah Hunt, the deceased grantor, had frequently declared his intention to make other and further provision for his wife than had been made in his will, and this writing was, beyond doubt, executed in fulfillment of such intention. (*Wallis* v. *Wallis*, 4 Mass. R., 135.)

Then as to the power of the husband or wife to convey or contract with each other. At law, there is no such power. In equity, conveyances to the wife are upheld where not prejudicial to creditors. (2 Kent, 132, 162 ; *Babcock* v. *Ackler*, 24 N. Y., 623 ; *Wallingford* v. *Allen*, 10 Peters Sup. Ct. R., 583 ; *Shephard* v. *Shephard*, 7 Johns. Ch. R., 57.)

There is no question before us as to the effect of the conveyance in Iowa, where the land is situated. Neither Nathaniel Hunt or his heirs have been in possession of the

land. If the form of the acknowledgment is wrong, and that question ever becomes material the subscribing witness can prove the deed again, in a more legal form. The instrument is valid of itself, under the circumstances of this case.

The judgment should be affirmed.

All concur. Judgment affirmed without costs to either party.