R. M. BLACKMAN ET AL.

v.

PRESTON BROTHERS ET AL.

*Family Settlements—Voluntary Conveyances—Bill to Set Aside—Want of Notice—Fraud against Subsequent Creditors of Grantor.*

1.  Where the grantor, after the execution of a voluntary conveyance to members of his family, which is not recorded, is permitted to retain possession as the ostensible owner, such possession is *prima facie* evidence of fraud

as against subsequent creditors who have given credit to the grantor upon the faith of his supposed ownership of the property.

2.  The rule which sustains and upholds family settlements, securing to the husband and father the right to make suitable and proper provision for his wife and children by means of voluntary conveyances, requires such reasonable notice of such conveyances as will prevent the grantor from afterward practicing a fraud upon others.

3.  In the case presented, it is *held:* That the failure of the grantees to record their deeds, while suffering the grantor to retain possession and control, pay taxes, receive the proceeds of the premises in question and obtain credit on the faith of his supposed ownership, renders their conveyances void as against the complainants, who are subsequent creditors.

[Opinion filed October 5, 1887.]

In ERROR to the Circuit Court of Saline County; the Hon. David J. Baker, Judge, presiding.

This was a proceeding below in chancery to subject certain real estate to the payment of judgments in favor of defendants in error against Calvin S. Blackman, one of plaintiffs in error, in which a decree was rendered as prayed and from which this writ of error was sued out. A reversal is here urged upon the ground that, under the facts proved, the bill should have been dismissed. The undisputed facts appearing from the evidence are, that prior to and on the 17th day of March, 1875, Calvin S. was the owner in fee and in possession of all the lands in question; that on that day he executed and acknowledged his two several deeds of conveyance, one to his son Samuel J., then about ten years old, for eighty acres, and the other to his son John Grant, then about six years old, for one hundred and twenty acres, the two hundred acres thus conveyed, then and ever since being known as the home farm of said Calvin S.; that on the 29th of October following he also conveyed by deed of that date to his wife, R. M. Blackman, the twenty acres also involved in this controversy; that these conveyances were voluntary gifts to the grantees; that when they were signed and acknowledged, Calvin S. was free from debt, and, at the time, did not contemplate the contracting of any debts whatever; that he did in fact, shortly thereafter, engage in mercantile business, in which he incurred

the liabilities to defendants in error described in their bill; that he continued to remain in the open, notorious and exclusive possession of the home farm and exercised at least some acts of ownership over the twenty acres to the time of the filing of this bill; that the same was during all of said time assessed in his name, and he paid the tax assessed thereon; that he received and used the rents, issues and profits of all of said real estate after said conveyances as before, rendering no account to the grantees therefor; that the deeds from the time they were executed remained in a family desk in the dwelling house of the family, and were not specially controlled by any one up to August 6, 1881, when they were filed for record; that within a week after the two first mentioned deeds were made, Calvin S., as he swears, called the boys up and gave them the deeds, explaining to them the land conveyed to each, and Samuel J. then put them in the desk. There is a conflict of evidence as to who filed the deeds for record, the recorder testifying that it was done by Calvin S. and giving very plausible reasons for the distinctness of his recollection of that fact. He is contradicted, however, by Calvin S. and by a son, Wm. H., who swears that he delivered them to the recorder by direction of his mother, who had some six weeks previously, delivered them to him. It is in proof that about the time the deeds were executed, there was more or less neighborhood talk about it, and that then and subsequently, it was understood by the friends and neighbors of the family that the home farm had been deeded to the younger boys, but there is no satisfactory proof that either of defendants in error or their agents, received any information of that fact. On the contrary the salesmen of the respective defendants in error, swear that Calvin S. told them that he owned it, and that he made that statement for the purpose of obtaining credit from them, and that they, relying upon the truth of such statement, did extend to him credit. These witnesses are contradicted by Calvin S. He does not, however, say that he at any time disclosed to them the fact that he had made the conveyances to his wife and sons. The indebtedness was incurred prior to the filing the deeds for record. After they

were recorded, settlements were made between Calvin S. Blackman and each of the defendants in error, and he executed to each his notes, secured in part by mortgages on other real estate, and it is contended on his behalf that the security then given was ample, but the evidence shows that upon foreclosure and sale of the mortgaged premises, balances remained due to each of defendants in error aggregating the sum of $2,276.67, the amount found by the decree below, and for the payment the lands in controversy are subjected, saving to Calvin S. Blackman his homestead rights therein.

Messrs. GREEN & GILBERTS, for plaintiffs in error.

Messrs. PARISH & PARISH, W. H. BOYER and MARSH & SCOTT, for defendants in error.

WILKIN, P. J.  The position assumed by the learned counsel for plaintiffs in error is that inasmuch as the conveyances sought to be questioned by this bill were made when the grantor was free from debt and worth several thousand dollars in real estate and other property besides that conveyed, the evidence failing to show that they were made in anticipation of incurring debt to avoid the payment of which they were made, the deeds must be held valid.  That such is the general rule of law can not be successfully controverted, nor do we understand counsel for defendants in error to call it in question.  Notwithstanding the validity of the transaction originally, the failure to pursue it by placing the deeds on record, changing possession or otherwise giving notice of the transfer of ownership, by means whereof defendants in error were induced to give credit to Calvin S. Blackman, the conveyances would become fraudulent as to them, and upon this theory, if at all, the decree must be sustained.  This proposition would seem to be in consonance with justice, and it certainly has the sanction of very high authority.  " A deed not fraudulent at first may become so afterward by being concealed or not pursued, by means of which creditors have been drawn in to lend their money.  *  *  *  The omission to place a deed on record or leaving it in the hands of the grantor are

instances of secrecy within the rule." Bump on Fraudulent Conveyances, 39, 40 ; Wait on Fraudulent Conveyances, 324 ; Hunyeford v. Earl, 2 Vernon, 261; Scrivner v. Scrivner, 7 B. Mon. 374.

" Where the grantor, after the execution of a voluntary conveyance to his sons, is permitted to retain possession as the ostensible owner, and the conveyance is not recorded, such continued possession is *prima facie* evidence of fraud as against subsequent creditors who have given credit to the grantor upon the faith of his supposed ownership of the property." Bank of U. S. v. Housman, 6 Paige, 526.

The grantees in this case are volunteers. They paid nothing whatever for the land claimed. It makes no difference therefore, whether they consented to the perpetration of a fraud by their grantor or not. Having failed to record their deeds and suffering their grantor to remain in possession and control, pay taxes and receive the proceeds therefrom—in short, leaving to the world the same evidence of ownership after as before the conveyances, thereby enabling him to obtain credit on the faith of his ownership, they can not now be allowed to go back to the original transaction and base their title upon it to the injury of those who were thus induced to give such credit. We do not understand that this rule militates against that which sustains and upholds family settlements, securing to the husband and father the right to make suitable and proper provisions for his wife and children by way of voluntary conveyances when he is free from debt or retains sufficient property to meet his then existing liabilities. It only requires such reasonable notice of such conveyances as will prevent the grantor from afterward practicing a fraud upon others. We think the evidence in the record justifies the conclusion that defendants in error were induced to give credit to Calvin S. Blackman on the belief that he owned the land and that, as to them, the conveyances sought to be set aside were secret and therefore void.

*Affirmed.*