### DIEFENDORF *v.* DIEFENDORF *et al.*

(*Supreme Court, General Term, Third Department.* February 4, 1890.)

1. HUSBAND AND WIFE—CONVEYANCES BETWEEN.
   A deed of land by a husband to his wife, if founded on a good consideration, will be sustained in a court of equity, as against the heirs of the husband.

**2. DEED—DELIVERY TO THIRD PERSON.**

Where a grantor properly executes and acknowledges a deed, and hands it to a third person, with instructions to retain it until after his death for his wife, and then put it on record, there is a delivery *in præsenti* to the grantee, and her acceptance may be presumed from the fact that the deed is beneficial to her.

**3. SAME—TESTAMENTARY DISPOSITION.**

Where a deed made in view of approaching death is to take effect at once, is not contingent on the grantor's death, imposes no conditions, and reserves no control, and is duly delivered, it does not operate as a testamentary disposition.

**4. SAME—CONSIDERATION TO SUPPORT.**

Where there are no rights of creditors affected, it is not necessary to the validity of a deed that the consideration therefor should equal the value of the property.

**5. SAME—POWER OF SALE.**

A deed providing that the grantee may sell the property, and invest in bonds and mortgages, does not affect the grantee's rights as owner of the property conveyed.

Appeal from circuit court, Montgomery county.

Action by Catherine Diefendorf against Mariah Diefendorf and others, to remove a cloud upon plaintiff's title to premises in Montgomery county, N. Y. Plaintiff was the wife of John Diefendorf, deceased, and defendants are his heirs at law. Prior to July 2, 1885, Diefendorf was the owner of the premises in question, where he had lived with his wife for some years, having no business except to look after his real estate, and plaintiff carried on the millinery business on her own account. On July 2, 1885, Diefendorf requested a physician to prepare a "deed" giving all of his property to his wife, and directing it to embody that "it was given in consideration of $3,000, paid to him by his wife, and also that she should expend $3,000 that he had received from home in a cemetery lot and monument, and for beautifying the lot." Such deed was prepared and duly executed on that day, and the grantor handed the deed to the physician, requesting him to "retain it until after my death for my wife, and then place it on record." The deed also contained a clause stating that, if the grantee "has a good opportunity to sell the above-mentioned property, she may do so, and invest the proceeds in approved bonds and mortgages on real estate." Diefendorf died July 14, 1885, and immediately after his death the deed was recorded. Plaintiff has resided on the premises since the date of the deed, claimed them as her own, and exercised acts of ownership over them. At the time the deed was executed plaintiff held her husband's notes, aggregating $3,000, given her for money she had loaned him, and after his death she expended over $3,000 for a lot and monument in the cemetery. After Diefendorf's death defendants claimed the deed was void, and claimed an interest in the premises, in consequence of which plaintiff was unable to sell the premises, and brought this action. At the close of the trial the court took the cause from the jury, and found that plaintiff was not the owner of the premises, and that defendants were, as heirs at law of John Diefendorf, deceased, entitled to the premises according to their respective rights. Judgment was entered accordingly, from which judgment plaintiff appeals.

Argued before LEARNED, P. J., and LANDON, J.

*Thad. W. Collins,* (*Thad. W. Collins, Jr.,* and *Nathaniel C. Moak,* of counsel,) for appellant. *James E. Dewey* (*Andrew J. Nellis,* of counsel,) for respondents.

LEARNED, P. J. This cause came on to be tried before the court and a jury. At the conclusion of the evidence the court took the cause from the jury, and reserved it for further consideration. It was subsequently submitted on written and oral arguments. As no objection was made by either party to this course, it must be considered as assented to, and we need not inquire whether a jury trial was not the right of the parties. The complaint alleges a title to certain land in the plaintiff by deed from John Diefendorf, since deceased, and her possession thereof, and that she and said John Diefendorf had

been in possession for more than three years. It alleges that defendants deny the validity of the deed, and claim to be the owners of the land by descent from said John Diefendorf, and it prays that they may be barred of this claim. The answer avers defendant's title by descent as aforesaid, and denies the validity of the deed, and it asks judgment in favor of one defendant for possession of the premises, and for the others that they be declared to have an estate in reversion. On these issues the parties went to trial, and the defendants recovered what they demanded. Under this state of the case, we do not think it necessary to inquire whether a claim of the defendants by descent from plaintiff's grantor (who had not been dead three years when this action was commenced) would justify an action under the Code, §§ 1638, 1639, or an action to remove a cloud, under equitable rules. The defendants set up a title, and tried the case on the merits, and practically recovered as in ejectment. We think, therefore, that the merits of the controversy should be here considered; for the merits of the controversy were tried in the court below, and the facts are before us now.

1. Owing to the unity between husband and wife, the husband could not at common law convey directly to her. This is changed by chapter 537, Laws 1887. But a deed from husband to wife would be sustained in equity. *Hunt* v. *Johnson*, 44 N. Y. 27; *Townshend* v. *Townshend*, 1 Abb. N. C. 81; *Jones* v. *Clifton*, 101 U. S. 225.

2. These defendants are not creditors of John Diefendorf, and it is not claimed that there are any creditors whose rights are injured by this conveyance, whether the consideration was love and affection, or money previously received, or anything else.

3. There is no question but that the deed was drawn up according to the wishes of the deceased, and was properly executed and acknowledged by him. It was also properly delivered. The deceased handed the deed, after he had executed it, to Dr. Ayres, who had drawn it, and said: "Retain it until after my death, for my wife, [the plaintiff,] and then put it on record." The object of delivery is to show the perfecting of the transaction by the grantor; that is, that the paper which he has signed is not merely prepared for some future time, to be used or not as he may then choose, but that it is intended to be and is used at the present time. This is signified by the act of the grantor in putting the paper into the possession of some other person; it may be the grantee, or some one for the grantee. In this case the deceased delivered it to Dr. Ayres for the grantee, and requested him to retain it for her. He did not wish to have it put on record until after his death. Perhaps he wished to have a peaceful death-bed, and to avoid remonstrances and importunities from his relatives. The answer of the defendants in this case indicates that he might have been exposed to this annoyance, had they known of the deed before his death. And where a deed has been delivered to a third person for the grantee, without condition, the assent of the grantee may be fairly presumed from the fact that the deed is beneficial to him. It is plain that the grantee has in the present case accepted the deed, from the facts of the case. *Munoz* v. *Wilson*, 111 N.Y. 295, 18 N. E. Rep. 855, and numerous cases there cited; *Church* v. *Gilman*, 15 Wend. 656. Of course, the recording was not necessary to the delivery or to the acceptance. The grantor did not postpone the delivery until after his death. He only requested that the recording should be thus postponed. The delivery took effect at once, and conveyed the title to the grantee.

4. Although this deed was probably made in view of the approaching death of the grantor, yet it was not a testamentary disposition of his property. A testamentary disposition of property is one which is not to take effect unless the grantor dies, nor until that event. Just. Pand. Lib. 29, tit. 6, c. 2. But in the present case there is complete evidence that the deed was to take effect at once, and that it was not contingent on the death of the grantor. The de-

livery was complete and absolute. The grantor imposed no conditions and reserved no control. The time of recording had nothing to do with the time of taking effect.

5. On the question of the consideration for the deed, we have the testimony of Dr. Ayres that the grantor said at the time of the execution of the deed that he wished it to embody that it was in consideration of the payment to him by his wife of $3,000, and he said that this was money she had paid to him; and the deed thus recites, which is presumptive evidence against the grantor and these defendants. Furthermore, the grantor wished Dr. Ayres to insert that his wife was to expend $3,000 in the purchase of a cemetery lot and erection of a monument. The deed so states, and the plaintiff has since complied with that provision of the deed. Thus the plaintiff has performed the very act which she was required to do by the deed. It matters not whether the expense of this act was greater or less than the value of the property conveyed. A small consideration will uphold a deed as well as a large one, except as against creditors of the grantor, and there are no such creditors here. These defendants stand in no better position than did the grantor. If the deed bound him, it binds them. Furthermore, the plaintiff proved notes of the deceased to her of sundry sums, amounting to about $2,200, besides interest. Now, these notes were certainly corroborating evidence of the statement made by the deceased to Dr. Ayres that he owed his wife $3,000. It is further in evidence that both before the marriage, and after, down to the time of trial, the plaintiff had carried on a separate business, and also that the grantor did no business. One witness testifies that he said that he received only $3,000 from home, (that is, from his family estate,) and that he intended to put that in the cemetery. That the remainder of the property belonged to his wife. It was therefore, as would seem, in recognition of her industry, by which the mortgage on the property was finally paid off, that the deceased desired to give all that he had to her.

6. The deed contains a clause that the grantee may sell the property, and invest in bonds and mortgages. Of course, this is a useless provision, but harmless. It would have no meaning, even if the deed had been, as defendants urge, a testamentary disposition of property. It takes nothing from plaintiff's rights as absolute owner.

7. We see no evidence of a lack of competency in the grantor. The deed was reasonable and proper. It deprived no one of any just claim on the grantor. He was childless, and these defendants are his brothers and sisters and mother. There is nothing whatever to show that the mind of the grantor was in the least affected by his illness. Indeed, the evidence of Dr. Ayres shows the contrary. No reason is shown why he should not give his property to his wife. It is not illegal for a husband to give property to his wife, even as a present, saving the rights of creditors. So far as appears, they had lived happily together, and her labor had done something, at least, to the support of the household. At any rate, if he chose to give his property to her he had a right to do so, even if all his brothers and sisters and his mother should complain. We see nothing in this case to invalidate the plaintiff's claim to be the absolute owner of the property. Judgment reversed, new trial granted, costs to abide event.

LANDON, J. Satisfied with the justice of the above result, though doubting whether the deed was delivered with intent that it should take instant effect, I concur.