TALCOTT *v.* LEVY *et al.*

*(Superior Court of New York City, Equity Term. July 11, 1892.)*

1. FRAUDULENT CONVEYANCES—HUSBAND TO WIFE—RECORDATION.
   Though Laws 1887, c. 537, authorizes transfers from a husband to his wife founded on love and affection, yet, where a deed of gift made while the husband is solvent is withheld from record because he believes it is inoperative, a subsequent conveyance, made in contemplation of insolvency to a third person who conveys the land to the wife, is fraudulent as to creditors, though made to effectuate the first conveyance.

2. SAME—PERSONAL JUDGMENT AGAINST GRANTEE.
   A creditor is entitled to a personal judgment against one who conveys to a third person land conveyed to her in fraud of the creditor, receiving as much as the land is worth above incumbrances.

Action by James Talcott against Norris Levy and others. Decree for plaintiff.

*Carter, Pinney & Kellogg*, for plaintiff. *Ira Leo Bamberger*, for defendants.

McADAM, J. The bill was filed by a judgment creditor to set aside as fraudulent two deeds of premises No. 170 East Ninety-Fifth street, in the city of New York,—one made by the judgment debtor to Mahlke Charmack,

July 9, 1888, and the other made by Charmack to Rebecca Levy, the wife of the judgment debtor, July 10, 1888.   The conveyances were subject to a $10,-000 mortgage, and the property was worth about $14,000.   The transfers were made without consideration, and for the purpose of putting the title in Rebecca Levy, Charmack acting as a mere conduit.   The conveyances, if they rested upon these facts, would have to be set aside, but the explanation offered requires serious thought before reaching that conclusion.   It appears that the judgment debtor, on February 17, 1888, while doing a prosperous business, and before the debt was contracted for which judgment went against him, executed and delivered a deed of the realty in question to his wife, Rebecca, intending to make a gift of the property to her.   The deed was not put upon record, because the defendant was advised that a deed executed from a husband direct to his wife was void, and, following this advice, the two deeds in question were subsequently executed and recorded in confirmation of what had been done before.   This feature requires us to review the entire transaction, and to construe the three deeds as links in one chain, that the strength of all may be tested together.   Separate ownership by the wife is now possible, and she may take the legal title to personal property, (even a transfer of the purchaser's interest in a contract for the sale of land) by gift direct from her husband.   *Fruhauf* v. *Bendheim*, 127 N. Y. 590, 28 N. E. Rep. 417; *Kelly* v. *Campbell*, 2 Abb. Dec. 492.   A husband honestly indebted to his wife may give to her a chattel mortgage to secure the debt, although he is at the time of executing it unable to pay all his debts in full.   *Spaulding* v. *Keyes*, 125 N. Y. 113, 26 N. E. Rep. 15.   As to real estate the rule is somewhat different. Thus, in *White* v. *Wager*, 25 N. Y. 328, it was held that a deed executed by a wife to her husband was ineffectual to pass title.   To the same effect is *Winans* v. *Peebles*, 32 N. Y. 423, in which case it was held that the deed might, however, be established in equity where a consideration had been paid.   In *Hunt* v. *Johnson*, 44 N. Y. 27, the conveyance was by the husband to the wife, and the court, referring to *White* v. *Wager, supra,* said: "That case differs from the present action in this: that it was a conveyance by the wife to the husband; this was by the husband to the wife.   They do not necessarily stand on the same basis in equity.   It is the duty of the husband to provide an assured and comfortable support for his wife during his life, and after his death.   No duty rests upon the wife to provide for the husband. * * *   An application of the husband's property for her comfort is eminently equitable, and has been favored by the courts from their earliest existence."   In *Dean* v. *Railroad Co.*, 119 N. Y. 540, 23 N. E. Rep. 1054, it was held that, prior to the passage of the act of 1887, c. 537, a deed of lands from husband to wife, or from wife to husband, was void, and did not operate to divest the grantor of title, unless founded upon valuable or meritorious consideration, such as would enable a court of equity to sustain it.   This case, like *White* v. *Wager, supra,* was, in the language of the court in *Hunt* v. *Johnson,* 44 N. Y., at page 35, "well decided upon its facts, and that without trenching upon the well-settled powers of the court to afford equitable relief in a proper case, and when presented by the parties entitled to ask for it."   *Winans* v. *Peebles, supra,* was decided upon the ground that, the deed from the wife to the husband "being wholly without consideration, a court of equity would not interfere to sustain it."

The deed executed by the judgment debtor to his wife, Rebecca, on February 17, 1888, being after the act of 1887, c. 537, expressly authorizing such transfers, was good both at law and in equity; and, being founded on love, affection, and the obligation to support his wife and family, might have been held valid as against all but existing creditors, if it had been placed on record at the time of its delivery to her, and if the grantee, in her answer, had pleaded its execution and delivery.   See, also, Laws 1892, c. 594, authorizing a married woman to enter into any compact with her husband, which act is

supposed to destroy the last remnant of marital disability to contract. Bump, in his work on Fraudulent Conveyances, at page 82, says: "A deed, not at first fraudulent, may become so by being concealed, because by its conceal-ment persons may be induced to give credit to the grantor. In such a case the use that is made of it relates back, and shows the intent with which it was made. The omission to place a deed on record, or leaving it in the hands of the grantor, or placing it in the hands of a third person, to be produced or suppressed according as exigencies may demand, are instances of secrecy under the rule," (citing cases.)

It will not do to leave title apparently in one, while it is, in fact, in an-other. This is out of the ordinary course of business, unnecessary, and di-rectly tends to the injury of those not in the secret. Conveyances to the wife, kept off record, cannot be sustained where the grantor yet continues in possession without any apparent change of ownership. In such case the fraud consists in the design to obtain credit by means of continued possession and apparent ownership, after attempting to place the legal title of his prop-erty beyond the reach of creditors. *Savage* v. *Murphy*, 34 N. Y. 508, affirm-ing 8 Bosw. 75; *Case* v. *Phelps*, 39 N. Y. 164. Such secret transfers have a direct tendency to induce persons to credit the apparent owner on the faith of his continued ownership, and, where they are made without any new con-sideration, they should not, in justice to creditors, be upheld to their preju-dice. As was said by the court of appeals in *Neuberger* v. *Keim*, (N. Y. App.) 31 N. E. Rep. 268: "The rule we regard as well stated by Mr. Justice Brewer in the case of *Schreyer* v. *Scott*, 134 U. S. 411, 10 Sup. Ct. Rep. 579: 'It is evident that the rule obtaining in New York, as well as recognized by this court, is that even a voluntary conveyance from husband to wife is good, as against subsequent creditors, unless it was made with intent to defraud such subsequent creditors, or there was secrecy in the transaction by which knowledge of it was withheld from such creditors, who dealt with the gran-tor upon the faith of his owning the property transferred, or the transfer was made with the view to entering into some new and hazardous business, the risk of which the grantor intended should be cast upon the parties having dealings with him in a new business.' See, also, *Todd* v. *Nelson*, 109 N. Y. 316, 327, 16 N. E. Rep. 360."

It is not contended that the failure to record a deed is conclusive evi-dence of fraud, but that, unexplained, it is a suspicious and strong circum-stance tending to prove fraudulent intent. *Warner* v. *Gillette*, 15 Wkly. Dig. 153; *Brockaway* v. *Fleming*, 22 Wkly. Dig. 430. The difficulty with the explanation offered here is that it strikes at the integrity and validity of the deed itself. The grantor was advised and believed that the transfer, be-cause made to the wife, was illegal; hence, in contemplation of law, no con-veyance at all. He acted on the belief that the deed was inoperative, and permitted his name to continue as the owner "of record" to the presumed in-jury of creditors, until the two deeds complained of were executed, when it, for some reason occurred to him that recording was a prudent or necessary safeguard. *Steele* v. *Coon*, 27 Neb. 586, 43 N. W. Rep. 411, presented a some-what similar question to that which arises here. In that case land had been conveyed by a husband to his wife, through a third party, the deeds being dated March 27, 1883, but not recorded. These deeds having been lost or mislaid, as the defendant alleged, new deeds were executed on October 13, 1884, and at once recorded. The husband's liability to the plaintiff was upon a note executed August 22, 1884, and maturing October 22d of the same year. The defendant expressly claimed that the first deed was not kept from the records with any intent to defraud the creditors of the grantor. Upon this point the court said: "Neither of the conveyances can be upheld as a volun-tary conveyance; the second, for the obvious reason that at this date the grantor, Archibald F. Coon, has already incurred the obligations upon and

for which the several judgments of the plaintiffs were afterwards rendered against him; and the first conveyance, for the reason that the deed was in law concealed and not pursued, not being placed upon record, in the due and ordinary course of business in like transactions, nor until after the incurring of the obligations by the grantor which are now sought to be enforced against the farm; indeed, never was recorded." The question again came up in *Hilliard* v. *Cagle,* 46 Miss. 309. There it appeared that a debtor who believed himself solvent executed a deed of trust of his plantation, stock, storehouse, and merchandise on December 19, 1886, to secure a 90-day note for $40,000. The deed was not recorded until January 30th of the next year, 1887. The evidence as to the reason for this delay was conflicting, and did not convince the court that the arrangement was made with a fraudulent scheme and purpose to defeat existing or future creditors. It was held, however, that in ascertaining the motive the court must look through the conduct, and from it make the deductions and inferences. A man must be conclusively taken to intend the natural and logical results of his acts. They say: "The natural and logical effect of knowledge by the public of the existence of the deed would be to destroy his credit and stop his business, except for liquidation. * * * The concealment of the deed, on the other hand, would enable him to prosecute his business. He could buy merchandise on credit, keep his warehouse full, and deal largely in cotton. He might be able to pass through the active business season with unshaken credit, and come out successful. * * * To come to this result it is not necessary to hold the deed itself to be fraudulent in its inception; for, as was declared in 1692, by Lord Commissioner HUTCHINS, in *Hungerford* v. *Earle,* 2 Vern. 261, ' a deed not at first void may become so by being concealed or not pursued, by which creditors are drawn in to lose their money.' * * * We are of opinion that the natural and logical effect of the agreement and assignment, and the conduct of the parties thereto, was to mislead and deceive the public, and induce credit to be given to Baggett [the grantor] which he could not have obtained if the truth had been known; and therefore the whole scheme was fraudulent as to subsequent creditors, as much so as if it had been contrived with that motive and for that object." In *Scrivenor* v. *Scrivenor,* 7 B. Mon. 374, a son executed a deed to his father as security in 1834, when the grantor was a trader, purchasing hogs on credit, borrowing money, and inducing others to become his security. It was not recorded until seven years later, when he had become greatly indebted, and was probably insolvent. Held, that it was void. The court says: "It is, moreover, conclusively shown that, notwithstanding the execution of the deed, and until some time after these suits were brought, in 1841, the grantor remained in possession of the land, using and apparently claiming it as his own, by listing it for taxation and otherwise just as he did before, and that he continued to purchase on credit and to borrow and become indebted until his credit, founded in part upon the possession and apparent ownership of this land, was entirely lost. The deed has thus evidently been the means of deceiving and defrauding others, and there is some ground to infer that it was originally so intended. At any rate, it has, by being so long kept secret, and finally put upon the record after the grantor had become embarrassed, and without any designation of the real consideration, been made the instrument of fraud against the creditors of the grantor." In *Hildeburn* v. *Brown,* 17 B. Mon. 779, the court, referring to an unrecorded mortgage, said: "Such contrivances or acts, though not designed to perpetrate an actual fraud upon other persons, have an inevitable tendency that way, and are obviously opposed to the general policy of the law requiring the public registration of all liens and incumbrances upon property permitted to be retained and claimed by debtors." See, also, *Mead* v. *Gregg,* 12 Barb. 653, 656; *Blennerhassett* v. *Sherman,* 105 U. S. 100; *Beecher* v. *Clark,* 12 Blatchf. 256, at page 268.

The judgment debtor was engaged in a business in which purchases were made on credit, and the failure which occurred was one of the hazards to be reasonably apprehended; and the plaintiff, though a creditor subsequent to the voluntary transfer to the wife, is entitled to complain of it. *Young* v. *Heermans*, 66 N. Y. 374; *Mead* v. *Gregg, supra.* The conveyances to Charmack, and by him to the wife of the judgment debtor, were made while the latter was embarrassed, and had reason to expect insolvency. *Coleman* v. *Burr*, 93 N. Y. 17. They were made without consideration and to put the property beyond the reach of creditors, and while made in confirmation of the deed previously executed, that being ineffectual as to creditors, the whole scheme fails. Upon the entire case, and particularly on account of the secret unrecorded conveyance, the plaintiff is entitled to a decree declaring the two subsequent deeds fraudulent and void as to him; that plaintiff's judgment be declared a lien upon the premises conveyed; and that the same be sold under execution to satisfy said judgment. *Cole* v. *Tyler*, 65 N. Y. 73; *Kennedy* v. *Barandon*, 4 Hun, 642; *Bank* v. *Warner*, 12 Hun, 306; *Belgard* v. *McLaughlin*, 44 Hun, 558. Submit findings and decree. Decree in favor of plaintiff.

(July 20, 1892.)

McADAM, J. Mrs. Levy having obtained $4,000 upon the property conveyed to her in fraud of judgment creditors, and the property not being worth more than the $4,000 and the prior liens thereon, the plaintiff is entitled to a personal judgment against Mrs. Levy, according to the rule declared in *Fullerton* v. *Viall*, 42 How. Pr. 294; *Swinford* v. *Rogers*, 23 Cal. 233; *Jones* v. *Reeder*, 22 Ind. 111; *Hubbell* v. *Currier*, 92 Mass. 333; *Dilworth* v. *Curts*, (Ill. Sup.) 29 N. E. Rep. 861; and kindred cases. The court has adapted the findings and decree to the exigencies of the case, (*Murtha* v. *Curley*, 90 N. Y. 372,) and in conformity to the principles decided by the courts in the books cited.